IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Court of Appeals No.:  23-3258

_____

UNITED STATES OF AMERICA,

        Appellee,

v.

ERIC G. HAFNER,

        Appellant.

_____

On Appeal from a Final Judgment of the
United States District Court for the
District of New Jersey
(D.N.J. Criminal Number: 3:19-cr-00790)

Sat Below:  Honorable Michael A. Shipp
                Honorable Zahid N. Quraishi

_____

BRIEF ON BEHALF OF ERIC G. HAFNER

Brandon D. Minde, Esq.
DUGHI, HEWIT & DOMALEWSKI
Attorneys for Appellant
340 North Avenue
Cranford, New Jersey 07106
(908) 272-0200
NJ Bar No. 027972004

TABLE OF CONTENTS

Page

STATEMENT OF SUBJECT MATTER
AND APPELLATE JURISDICTION ................................................. 1

STATEMENT OF RELATED CASES ............................................. 1

STATEMENT OF ISSUES
AND STANDARD OF REVIEW ....................................... 1

STATEMENT OF THE CASE............................................................ 3

STATEMENT OF FACTUAL AND PROCEDURAL HISTORY ... 3

RULINGS PRESENTED FOR REVIEW ......................................... 16

SUMMARY OF ARGUMENT ........................................................ 17

LEGAL ARGUMENT ...................................................... 20

POINT I
The District Court Abused Its Discretion By Prohibiting
Withdrawal of Defendant's Invalid Guilty Plea ................................ 20

  A. Defendant's plea was not entered knowingly and
     voluntarily ................................................................. 22

  B. Defendant presented additional fair and just reasons
     to withdraw his plea based on the inability to appeal
     several critical pretrial issues .................................................. 32

    i.      Defendant was denied his Sixth Amendment
         right to self-representation. ................................. 32

    ii.     Venue was Improper ........................................... 35

    iii.    Defendant was Denied his Fifth Amendment Due Process
         Rights and Sixth Amendment Speedy Trial Rights ............ 40

i

C. Defendant's request to withdraw his plea was
supported by assertions of factual and legal innocence .............. 43

POINT II
The Sentence of 240 Months was Excessive and Unreasonable
When Considering § 3553 Factors ...................................... 45

CONCLUSION ................................................... 53

CERTIFICATION OF BAR MEMBERSHIP ................................. 54

CERTIFICATION OF WORD COUNT ........................... 54

CERTIFICATION OF COMPLIANCE-ELECTRONIC
FILING AND IDENTICAL COMPLIANCE OF BRIEFS............... 54

CERTIFICATION OF VIRUS CHECK............................... 55

CERTIFICATION OF FILING AND SERVICE.............................. 55

APPENDIX – VOLUME I .................................... 56

Notice of Appeal....................................... Da1

Order Denying Motion to Withdraw Plea of Guilty entered
November 24, 2022 .................................. Da2

Memorandum Opinion of Judge Michael A. Shipp Denying
Defendant's Motion to Withdraw Plea of Guilty entered
November 24, 2022 ................................ Da3

Judgment as to Defendant entered December 11, 2023 ........... Da24

## <u>TABLE OF CITATIONS</u>

<u>Page</u>

**<u>CASES</u>**

<u>Barker v. Wingo</u>, 407 U.S. 514 (1972)................................................  42

<u>Faretta v. California</u>, 422 U.S. 806, (1975) ......................................  33, 35

<u>Gall v. United States</u>, 552 U.S. 38 (2007) ........................................  18

<u>Government of the Virgin Islands v. Berry</u>,
  631 F.2d 214 (3d Cir. 1980)..............................................................  21

<u>Hill v. Lockhart</u>, 474 U.S. 52 (1985) .................................................  22

<u>Nelson v. United States</u>, 555 U.S. 350 (2009)...................................  47

<u>Shotts v. Wetzel</u>, 724 F.3d 364 (3d Cir. 2013) .................................  26

<u>Strunk v. United States</u>, 412 U.S. 434 (1973)....................................  42

<u>United States v. Artabane</u>, 868 F. Supp. 76 (M.D. Pa. 1994).............  28

<u>United States v. Avila</u>, 733 F.3d 1258 (10th Cir. 2013)....................  31

<u>United States v. Barker</u>, 514 F.2d 208 (D.C. Cir. 1975) ...................  21

<u>United States v. Bin Laden</u>, 146 F. Supp. 2d 373 (S.D.N.Y. 2001)...  38

<u>United States v. Booker</u>, 543 U.S. 220 (2005) ..................................  18

<u>United States v. Bui</u>, 769 F.3d 831 (3d Cir. 2014) ...........................  26-27

<u>United States v. Cooper</u>, 437 F.3d 324 (3rd Cir. 2006).....................  45

<u>United States v. Cooper</u>, 437 F.3d 324, 329 (3rd Cir. 2006).............  2

<u>United States v. Diaz</u>, U.S. App. LEXIS 10139 (3d Cir. 2023) .........  38

United States v. Erwin, 602 F.2d 1183 (5th Cir. 1979),
    cert. denied, 444 U.S. 1071 (1980) ................................................... 38

United States v. Furno, 655 F.3d 288 (3rd Cir. 2011) ........................ 18

United States v. Goff, 501 F.3d 250 (3rd Cir. 2007) .......................... 18

United States v. Grier, 475 F.3d 556 (3d Cir. 2007) .......................... 2, 45

United States v. Hawthorne, 502 F.2d 1183 (3d Cir. 1974) .............. 22

United States v. Hernandez, 203 F.3d 614 (9th Cir. 2000) ............... 30

United States v. Ismaili, 828 F.2d 153 (3d Cir. 1987)....................... 40

United States v. Jones, 336 F.3d 245 (3d Cir. 2003) ......................... 20

United States v. King, 604 F.3d 125 (3d Cir. 2010) ........................... 1, 20

United States v. Levinson, 543 F.3d 190 (3rd Cir. 2008)................... 47

United States v. Levy Auto Parts, 787 F.2d 946 (4th Cir.),
    cert. denied, 479 U.S. 828 (1986) ..................................................... 37

United States v. Liang, 224 F.3d 1057 (9th Cir. 2000) ...................... 39

United States v. Lombardo, 241 U.S. 73 (1916) ................................ 37

United States v. McTiernan, 546 F.3d 1160 (9th Cir. 2008).............. 29

United States v. Nahodil, 36 F.3d 323 (3d Cir. 1994) ....................... 21

United States v. Peppers, 302 F.3d 120 (3d Cir. 2002) ..................... 33

United States v. Pendleton, 658 F.3d 299 (3d Cir. 2011)................... 36-39

United States v. Pierre, 120 F.3d 1153 (11th Cir. 1997) ................... 31

United States v. Rodriguez-Moreno, 526 U.S. 275 (1999) ............... 36

United States v. Sanchez, 517 F.3d 651 (2nd Cir. 2008)................... 48

United States v. Siddons, 660 F.3d 699 (3d Cir. 2011) ..................... 20-21

United States v. Stayton, 408 F.2d 559 (3d Cir. 1969)..................... 21

United States v. Taylor, 21 F.4th 94 (3d Cir. 2021) .......................... 34

United States v. Tomko, 562 F.3d 558 (3rd Cir. 2009) ..................... 47

United States v. Young, 424 F.2d 1276 (3d Cir. 1970) ..................... 21

## UNITED STATES CONSTITUTION & STATUTES

U.S. Const. Amend. VI ....................................................... 33, 42
18 U.S.C. § 3231 .................................................................. 1
18 U.S.C. § 3553 .................................................................. 1, 46-47
18 U.S.C. § 3553(a) ............................................................. passim
18 U.S.C. § 3238 ................................................................. 36-39
18 U.S.C. § 3237 ................................................................. 37
18 U.S.C. § 875(c) .............................................................. 39, 51
18 U.S.C. §§ 3161-3174 ...................................................... 41, 42
28 U.S.C. § 1291 ................................................................. 1

## UNITED STATES SENTENCING GUIDELINES

USSG § 3C1.1.................................................................. 46, 49-50

USSG § 2A6.1(b)(1) ......................................................... 46, 51

## FEDERAL RULES OF CRIMINAL PROCEDURE

Fed. R. Crim. P. 11 ........................................................... 20

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The United States District Court for the District of New Jersey ("District Court") had subject matter jurisdiction pursuant to 18 U.S.C. § 3231, which confers original jurisdiction upon the District Courts over all offenses against the laws of the United States.

Appellate jurisdiction in the Court of Appeals for the Third Circuit is proper under 28 U.S.C. § 1291.

Defendant filed a Notice of Appeal on December 26, 2023.  (Da1).[1]

## STATEMENT OF RELATED CASES

There are no co-defendants or related cases.

## STATEMENT OF ISSUES AND STANDARD OF REVIEW

Issue: Whether the District Court abused its discretion denying the withdrawal of defendant's unknowing and involuntary guilty plea.

Standard of Review: This Court reviews a motion to withdraw a guilty plea prior to sentencing for abuse of discretion.  United States v. King, 604 F.3d 125, 139 (3d Cir. 2010).

---

[1] "Da" refers to Defendant's Appendix.

1

Issue: Whether the Court's outside the plea agreement and above the statutory guidelines range sentence of 240-months' imprisonment was unreasonable and failed to give meaningful consideration to the advisory guidelines range and all of the sentencing factors listed in 18 <u>U.S.C.</u> § 3553(a) in arriving at a sentence which is "sufficient but not greater than necessary" to achieve the goals of federal sentencing?

Standard of Review:  This Court reviews a sentence for reasonableness. <u>United States v. Cooper</u>, 437 F.3d 324, 329 (3rd Cir. 2006). Additionally, this Court exercises plenary review over a district court's interpretation of the United States Sentencing Commission Guidelines (USSG).  <u>United States v. Grier</u>, 475 F.3d 556, 570 (3d Cir. 2007) (en banc). Factual findings relevant to the guidelines are reviewed for clear error.  <u>Ibid.</u>

## <u>STATEMENT OF THE CASE</u>

### Facts and Relevant Procedural History

On October 6, 2016, the Government filed a sealed Complaint against Defendant in the District of New Jersey, for offenses allegedly committed in the District of New Jersey.  (Da31 and Da35 at 3:6-8).

Three years later, on September 28, 2019, Defendant was arrested on the Island of Saipan, District of the Northern Mariana Islands, pursuant to the arrest warrant by complaint issued out of the District of New Jersey.  (Da35 at 3:10-22).  As a result, on September 30, 2019, defendant had an Initial Appearance in the U.S. District Court for the Northern Mariana Islands.  At this Initial Appearance, Defendant stated for the very first time, and certainly not the last, that, "**I do intend to plead not guilty and wish to invoke speedy trial rights and demand for jury trial in this matter, Judge**."  (Da35 at 12:7-9) (emphasis added).

At the initial appearance, the court confirmed that under the speedy trial act, Defendant had a right to an indictment within 30 days from his arrest on the Island of Saipan (Da35 at 13:13-24 and 18:20-24).  The government petitioned for a removal order so that Defendant would be brought to New Jersey to face the charges from 2016.  (Da35 at 3:1-4).  Defendant waived his immediate right to a preliminary hearing to be held in the District Court for the Northern

Mariana Islands, instead electing for them to be held in New Jersey. (Da35 at 10:6-19). The court ordered the preliminary hearing to occur before a magistrate judge in the District of New Jersey by October 11, 2019, in order to satisfy the 14-day requirement. (Da35 at 20:21-25). In ordering that the Defendant be removed to New Jersey and also detained pending a hearing in New Jersey, the court stated that Defendant would be, "on a plane and out of here within 10 days." (Da35 at 28:24-25).

On October 17, 2019, the Court in the District of New Jersey entered an order delaying the 14-day deadline to conduct the preliminary hearing based on the Government's proffer of existing extraordinary circumstances. (Da68). That order extended the time to conduct the preliminary hearing, ordering it to occur within seven days of Defendant's arrival in the District. Neither the Defendant nor his counsel were notified of the Government's motion to extend the time, nor did they consent to extraordinary circumstances or ends of justice that would justify that extension. (Da76 at 6:3-15).

On October 23, 2019, nearly one month after Defendant's initial appearance and well after the 14-day requirement for a preliminary hearing, Defendant appeared for his Initial Appearance in the District of New Jersey and confirmed once again that he did not intend to waive any preliminary hearing (Da76 at 6:16-20).

At a judicial recusal hearing held on October 29, 2019, the Defendant continued to object to the extension of time for the preliminary hearing beyond what is permitted by statute. The court noted the continuation of Defendant's objection to the delay as preserved for the record. (Da86 at 8:10-12). The judge granted Defendant's application for her to recuse herself, and then denied Defendant's request for bail, noting that there remained 24 hours in the time frame of the original extension before it expired. (Da79 at 6:14-15, 8:13-15, and 9:5-8).

Nearly thirty minutes after the recusal hearing adjourned on the same day, Defendant was brought before another judge for a preliminary hearing (Da89). The agent testifying for the Government was not the agent who swore out the complaint in 2016, was not part of the investigation in 2016, and admittedly was essentially reading the prior agent's file and reviewing call information and photographs in evidence. (Da102-104, and Da108 at 20:3-15). On October 29, 2019, thirty-one days after Defendant's arrest, the Court found, "that there is probable cause existing for a reasonable person to conclude that the defendant engaged in the conduct alleged in the complaint." (Da126 at 38:5-8)

Two days later, on October 31, 2019, Defendant was indicted. (Da128).

On November 12, 2019, Defendant appeared for his Arraignment at which time a not guilty plea was entered. (Da184 at 30:3-4). At the Arraignment, Defendant argued for a dismissal of the complaint based on the Government's failure to follow the court rules and the court's initial order and conduct the preliminary hearing in New Jersey within the required timeframe, as well as the failure of the Government to specifically notify the Defendant, while he was in Government custody, of its motion to extend time for the preliminary hearing. (Da187 at 33:10-37:4). The court denied Defendant's request for dismissal of the complaint. Prior to adjourning, as he had done at his Initial Appearance, the Defendant advised the court that, **"I'm not waiving any speedy trial rights. I demand a speedy trial under the court rules, as well as case law, and my constitutional rights to a speedy trial."** (Da193 at 39:13-16) (emphasis added).

Consistent with Defendant's representations to the courts from the start that he was not guilty and wanted a jury trial in this matter, Defendant began a course of motion practice in order to assert his innocence and his rights. On March 3, 2020, the court ruled on Defendant's motions to 1) dismiss the indictment based on the government's failure to comply with F.R.C.P 5.1 (Da202-227), 2) disqualify the Assistant U.S. Attorney or hold an evidentiary hearing (Da228-243), and 3) an omnibus motion seeking an order directing the

government to produce certain materials and permitting the Defendant time to file additional pretrial motions. (Da244-246; Da248 2:21-3:8). As to the motion to dismiss the charges and for immediate release for failure to provide a timely preliminary examination under F.R.C.P. 5.1 and 18 U.S.C. § 3060, the court held that without determining whether "extraordinary circumstances" existed at the time of the government's request for an extension of time, "Rule 5.1 and 18 U.S.C. § 3060 do not provide the relief defendant is seeking." (Da267 at 19:25-22:13). The court held that, "[i]f defendant was entitled to any relief, it would have been his release when his preliminary hearing was delayed…." (Da269 at 23:8-10). Finding that if he would have been released, he could still be tried for the charges in a later indictment, and that once indicted thirty-three days after his arrest, the Government could have then sought to hold him under the Indictment, the court denied Defendant's motion to dismiss the indictment based on the Government's alleged failure to comply with Rule 5.1. (Da269 at 23:11-20). The court also denied Defendant's motion to disqualify the prosecutor for a conflict of interest or order an evidentiary hearing on the issue. (Da272 at 26:23-27:6). As to Defendant's omnibus motion, the court granted the defense additional time to file pretrial motions alleging Fifth and Sixth amendment violations. (Da277). Defendant subsequently filed a motion to dismiss on speedy trial grounds under the Sixth Amendment (Da279-331), and

a motion to dismiss on due process grounds under the Fifth Amendment (Da332-350), both of which the court denied in a memorandum opinion dated November 20, 2020.  (Da351-362).

On March 11, 2021, the Defendant filed his third motion seeking dismissal of the Indictment based on speedy trial-related issues. (Da363-402). On May 10, 2021, the court denied relief sought under the Speedy Trial Act and the Sixth Amendment speedy trial rights.  (Da413).

At a case management conference on May 21, 2021, the government asked the court to enter a speedy trial continuance order over the Defendant's objection because although the trial was set to begin on August 9, 2021, the speedy trial clock was set to run out in July.  (Da417 at 4:8-22).  Defendant made it clear that he was not waiving anything and that he demanded his speedy trial.  (Da417 at 4:24-5:1).  The Court found that it was going to be necessary to enter a speedy trial continuance as they approached the trial date.  (Da419 at 8:7-8).

On August 9, 2021, the jury trial began with instructions to the jury followed by opening statements before adjourning for the day.  (Da424).

On August 10, 2021, before the parties began presenting evidence to the jury, the Defendant advised the court that he wished to proceed pro se. (Da425).  Defense counsel advised the court that after hearing opening

statements, the Defendant was not satisfied with counsel's strategy in defending the case, and that Defendant believes it is not in his interest for counsel to represent him and that Defendant wants to defend himself in the manner that he believes needs to be done.  (Da427 at 34:22 – Da428 at 35:10).  The Defendant was given an opportunity to place his position on the records, after which, the court informed the Defendant that, "[y]ou've just proven that you're not capable of representing yourself right now."  (Da428 at 35:23 – Da431 at 38:10).  The court advised the Defendant that it was not entertaining any motion for him to represent himself, to which the Defendant mentioned his right under Faretta v. California, that he was knowingly, willingly, voluntarily and intelligently waiving his rights to representation by an attorney, and that he knows what he is doing.  (Da432 at 39:9-24).  After continued back and forth between the court and the Defendant, defense counsel raised the issue of whether there is a question as to Defendant's competency, which the court agreed with there being issues on, to which the Defendant responded that he knows exactly what is going on.  (Da438 at 45:7-46:4).  Ultimately the court had the Defendant removed from the courtroom, "based upon his use of profanity, his belligerence, his disrespect to the Court, his volume, [and] his agitation."  (Da449 at 56:20-24).  The court subsequently brought in the jury to

voir dire them to find out if they heard any of the statements made in the courtroom while they were outside, before breaking for the day.

The parties returned to the court the next day, August 11, 2021, and the court announced its finding that it has reasonable cause to order a competency evaluation of the Defendant.  (Da466).  The court reserved on whether Defendant knowingly, voluntarily, and intelligently waived his right to counsel, ordered a psychological evaluation of the Defendant, and granted the defense motion for a mistrial, which the government did not oppose (Da467; Da473).

It took nine months before the Defendant would complete the court ordered psychological evaluations, a competency hearing was conducted, and Defendant would get to appear again before the court to resume trial.  (Da489).

On May 17, 2022, at 9:08 a.m., the Defendant appeared before the court for a <u>Faretta</u> hearing. (Da490).  At the beginning of the hearing, the government placed on the record that, "there have been some discussions about a plea, but nothing's been finalized as of yet.  We're going to try to work that out on a break and present it to [defense counsel] and see where we go from there, but the Government does not want to delay this proceeding or the jury selection for that purpose."  (Da492 at 3:5-9).  Defense counsel confirmed the following: 1) there was no agreement in principle, but there was a suggestion that the Government was not opposed to; and 2) at that point nothing had been put

down in writing. (Da492 at 3:11-15). At this time, the court confirmed that it already determined that the Defendant is competent to stand trial, and this proceeding was to determine whether he would represent himself at the trial, with the court advising that the jury was being assembled downstairs at that very moment. (Da492 at 3:24-25). The Defendant once again confirmed that he was asking to represent himself, that he studied and completed some law-related classes and relevant issues, and that he is making this decision freely and that it reflects his personal desire. (Da493-498). The court ruled that the Defendant has effectively waived his right to self-representation, and that Defendant's "conduct will be obstreperous and manipulative enough to justify denying his request to proceed pro se." (Da501 at 14:21-15:15). Upon making this ruling, the court stated that they would wait for the jury members to come into the courtroom, with the court hoping that they will begin with jury selection within the next 10 to 15 minutes. (Da504 at 15:18-21).

Later that same day, hours after being denied the right to represent himself pro se and on the cusp of being forced to start a jury trial being represented by a lawyer whose strategy the Defendant did not agree with, the Defendant appeared before the court for a change of plea hearing. (Da489). When the court asked the government to summarize the plea agreement, the government stated that, "[p]ursuant to the plea agreement, the defendant will

enter pleas of guilty to Counts 4, 17, and 28 of the indictment…and if the defendant enters a guilty plea pursuant to this agreement and otherwise fully complies with all the terms of the agreement, the United States will not initiate any further criminal charges against the defendant for any of the conduct referenced in the remaining counts that are charged in the indictment." Da511 at 6:21-7:11).

When the court asked if there is any appellate waiver in this document or [plea] agreement, defense counsel responded that there is not [any appellate waiver]. The court confirmed, "[O]kay. So there's no waiver of appeal." (Da514 at 9:1-5). Despite the limited counts that the Defendant was pleading guilty to, the government then proceeded to elicit a factual basis encompassing all the counts in the indictment. (Da515 10:7-23:3). On May 17, 2022, the court accepted the plea and set a date for sentencing.

Approximately one month later, on June 24, 2022, defense counsel advised the court that Defendant wanted to withdraw his guilty plea. (Da531).

On July 17, 2022, pending appointment of new defense counsel, Defendant wrote to the court proclaiming his innocence and seeking trial, and that he wanted to "make sure the plea withdrawl(sic) is processed as quickly as possible." (Da532).

On July 18, 2022, Defendant wrote to the court detailing the circumstances under which he entered the plea and his mental state during that time which resulted in a plea that was neither voluntary nor knowing, and the reasons he sought to withdraw from the plea and proceed to trial, including his misunderstanding of the waiver of pretrial motions for appeal. (Da533-534).

On July 27, 2022, Defendant again wrote to the court proclaiming his innocence and advising that he wanted to withdraw his guilty plea.  (Da535).

On July 28, 2022, in a telephonic status conference before the court, the Defendant advised that: 1) he was not properly advised by defense counsel of the appellate consequences of the guilty plea, specifically, that pretrial motions would not be preserved even though there was no waiver of appeal in the plea agreement, (Da544 at 9:14-23); and 2) for a variety of reasons he was not in a proper mental state during the time frame that he entered the plea. (Da545 at 10:6-25).

On August 16, 2022, the court appointed new counsel, TA, for Defendant (Da550).

On September 28, 2022, new defense counsel filed a formal Motion to Withdraw Guilty Plea, which the government opposed.  (Da551-624).  On November 24, 2022, the court denied Defendant Motion to Withdraw Guilty Plea.  (Da2-23).

On March 2, 2023, defense counsel TA made a motion to withdraw as

attorney, which was granted by the court on March 13, 2023.  (Da625-628).

The case was subsequently reassigned to a new judge as well, from Judge

Michael A. Shipp to Judge Zahid N. Quraishi.

On March 20, 2023, the defendant, as pro se, filed a motion to withdraw

his guilty plea.  (Da630).  On March 27, 2023, defendant advised the court he

wished to proceed as pro se.  (Da633).  On April 4, 2023, the undersigned was

assigned as counsel for defendant.  (Da638).  The court subsequently denied the

defendant's motion to withdraw his guilty plea (Da639) as moot, and ordered

defendant to go through counsel and that counsel "shall seek leave of the Court

to address any potential motions not previously decided by this Court."

(Da640).

On April 17, 2023, counsel wrote to the court to request permission to

file additional motions, as the Defendant wanted counsel to file another motion

to withdraw his guilty plea, dismiss the indictment, and order Defendant's

immediate release from custody based on the points as specifically phrased by

Defendant in his previously filed Pro Se motion.  (Da640).

On May 4, 2023, the court granted in part and denied in part the request

for leave to file additional motions, ordering that:

> This Court has previously ruled on similar motions
> filed by the Defendant throughout the duration of his

case and there appears to be no good cause to revisit them. Defendant is reminded that he is pending sentencing and can avail himself of the appellate process and collateral challenges to this Court's rulings and his conviction at the appropriate time and in the appropriate forum. Additionally, to the extent Defendant intends to continue to raise new issues and leave to file additional motions, such requests will be denied. Deadlines for such motions have long expired and this case cannot proceed to its finality if new issues can be raised whenever the Defendant so desires. Nonetheless, because Defendant does raise a new venue issue at this time and without objection, and for reasons more specifically outlined in the Government's Response dated April 25, 2023, Defendant, through Defense Counsel, will be permitted to file a Motion to Withdraw his Guilty Plea, although such motion is limited in scope to the sole issue of ineffective assistance of counsel for prior counsel's failure to file a motion to dismiss based on improper venue.

(Da644).

On June 2, 2023, counsel filed a motion to withdraw defendant's guilty plea based on prior counsel's ineffective assistance for failing to file a motion to dismiss for improper venue, which was ordered denied on July 6, 2023. (Da646-670).

Over the next few months defendant sought to file additional motions, and counsel sought leave of the court to file additional motions based on defendant's requests, which were consistently denied by the court. (Da695-731; Da732).  Additionally, in September 2023, the defendant, on his own and

without the knowledge of counsel, sent correspondences to the court personally attacking and maligning the judge.  (Da734-736).

On December 7, 2023, sentencing proceedings occurred for defendant. On that date, defendant signed a Court Refusal Form and did not attend, so sentencing was held in absentia.  The court sentenced defendant for a term of 240 months, which was a sentence significantly above the Sentencing Guidelines Range.  (Da791 at 55:18-20).

### Rulings Presented for Review

Defendant appeals the denial of his motion to withdraw his guilty plea. Defendant also presents the critical pretrial rulings which are inextricably related to the district court's erroneous denial of defendant's motion to withdraw his plea.  Specifically, with respect to Defendant's unknowing waiver of issues on appeal upon incorrect advice of prior appointed counsel and an ambiguous plea colloquy that did not adequately apprise him of said waiver. The pretrial issues include the trial court's denial of Defendant's request to represent himself at trial, erroneous rulings on prior motions related to due process and speedy trial violations, and improper venue.

Defendant also appeals the imposition of an excessive sentence of 240-months' imprisonment following his plea to Counts Four, Seventeen, and Twenty-Eight of the Indictment, where the sentence was beyond the advisory

guidelines and further beyond the upward variance requested by the U.S. Attorney's Office and failed to properly consider or adhere to the factors set forth in 18 U.S.C. § 3553.

## SUMMARY OF ARGUMENT

Defendant Eric Hafner was deprived of his substantial rights throughout the pendency of this case.

The culmination of events that led to Defendant's change of plea reveal that his guilty plea was not entered knowingly and voluntarily as he was improperly advised of his Rule 11 rights by his prior appointed counsel or the district court during the plea colloquy. This error gravely impacted Defendant's constitutional rights as he was improperly advised of the inability to pursue several critical pretrial rulings related to his substantial rights.

Defendant argues that the district court abused its discretion in refusing to permit withdrawal of the invalid guilty plea prior to sentencing, despite the Defendant's lack of knowledge at the time of the plea, the fair and just reasons presented by Defendant, the Defendant's assertions of factual and legal innocence, and the lack of prejudice to the Government. Defendant submits that his guilty plea was invalid and he should be granted a new trial.

Notwithstanding Defendant's position that his guilty plea was invalid, Defendant further argues that the court's sentence was excessive and

unreasonable.  After United States v. Booker, 543 U.S. 220 (2005), the district court must engage in a sentencing that involves a three-step process:  (1) "district courts are to calculate a defendant's sentencing Guidelines range precisely as they would have before pre-Booker"; (2) courts must formally rule on any departure motions "and state on the record whether they were granting a departure and, if so, how such a departure affects the initial Guidelines calculation"; and (3) courts "are required to exercise their discretion by considering the relevant 18 U.S.C. § 3553(a) factors in setting their sentences, regardless of whether it varies from the original calculation."  United States v. Furno, 655 F.3d 288, 329 (3rd Cir. 2011); accord United States v. Goff, 501 F.3d 250, 254 (3rd Cir. 2007).

This Court has continually stressed since the United States Supreme Court decision in United States v. Booker, 543 U.S. 220 and Gall v. United States, 552 U.S. 38 (2007) that a District Court must give "meaningful consideration" to all of the relevant sentencing factors listed in 18 U.S.C. § 3553(a) and must impose a sentence that is "sufficient but not greater than necessary" to achieve the goals of Federal sentencing.

In the matter at bar, the District Court's sentence of 240-months' imprisonment, above the advisory guidelines range of 70-87 months, above the advisory guidelines range with additional enhancements of 135 to 168 months

and above the upwards variance requested by the U.S. Attorney's Office of a sentence of 210 months, was unreasonable when giving meaningful consideration to all of the sentencing factors listed in 18 U.S.C. § 3553(a) in arriving at a sentence which is "sufficient but not greater than necessary" to achieve the goals of federal sentencing.

## LEGAL ARGUMENT

### POINT I

### THE DISTRICT COURT ABUSED ITS DISCRETION BY PROHIBITING WITHDRAWAL OF DEFENDANT'S INVALID GUILTY PLEA.

A motion to withdraw a guilty plea prior to sentencing is reviewed for abuse of discretion.  United States v. King, 604 F.3d 125, 139 (3d Cir. 2010).

Federal Rule of Criminal Procedure 11 provides that "[a] defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).

A district court evaluating a motion to withdraw a guilty plea must consider three factors: "(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2003) (citations omitted).

A "defendant bears a substantial burden of showing a fair and just reason for the withdrawal of his plea." United States v. Siddons, 660 F.3d 699, 703 (3d Cir. 2011) (citation omitted).  "A shift in defense tactics, a change of mind, or

the fear of punishment are not adequate reasons" for plea withdrawal.  Jones,

336 F.3d at 252.

While there is no absolute right to withdraw a plea, the Third Circuit has

stated that "motions to withdraw guilty pleas made before sentencing should be

liberally construed in favor of the accused and should be granted freely."

Government of the Virgin Islands v. Berry, 631 F.2d 214, 219 (3d Cir. 1980)

(citing United States v. Young, 424 F.2d 1276, 1279 (3d Cir. 1970); United

States v. Stayton, 408 F.2d 559, 560 (3d Cir. 1969)).  The Third Circuit has

further instructed:

> The liberal rule for withdrawal of a guilty plea before
> sentence is consistent with the efficient administration
> of criminal justice. It reduces the number of appeals
> contesting the 'knowing and voluntariness' of a guilty
> plea, and avoids the difficulties of disentangling such
> claims. It also ensures that a defendant is not denied a
> right to trial by jury unless he clearly waives it.

> [Young, 424 F.2d at 1279.]

"At minimum, a 'motion to withdraw should be granted if the plea was

not made voluntarily and intelligently.'"  United States v. Nahodil, 36 F.3d 323,

330 (3d Cir. 1994) (citing 8A James Wm. Moore, et al., Moores Fed. Practice P

32.09[1]. at 32-89 (1994)); cf. United States v. Barker, 168 U.S. App. D.C. 312,

514 F.2d 208, 221 (D.C. Cir.) (holding that a court should "almost always"

allow the withdrawal of pleas which were entered unconstitutionally or contrary

to the provisions of Federal Rule of Criminal Procedure 11), cert. denied, 421

U.S. 1013 (1975); see also United States v. Hawthorne, 502 F.2d 1183, 1186-87

(3d Cir. 1974).

The longstanding test for determining the validity of a guilty plea is

"whether the plea represents a voluntary and intelligent choice among the

alternative courses of action open to the defendant." Jones, 336 F.3d at 253,

quoting Hill v. Lockhart, 474 U.S. 52, 56 (1985).  A defendant seeking to

withdraw a guilty plea as involuntary or unknowing due to ineffective

assistance of counsel must show (1) "that his attorney's advice was under all the

circumstances unreasonable under prevailing professional norms" and (2) "that

he suffered sufficient prejudice from his counsel's errors." Id. at 253-254.

**A. Defendant's plea was not entered knowingly and voluntarily.**

The culmination of events leading up to Defendant's change of plea

reveal it was not entered knowingly and voluntarily.

On May 17, 2022, at 9:08 a.m., the Defendant appeared before the court

for a Faretta hearing.  (Da490).  At this time, the court confirmed that it already

determined that the Defendant is competent to stand trial, and this proceeding

was to determine whether he would represent himself at the trial, with the court

advising that the jury was being assembled downstairs at that very moment.

The Defendant once again confirmed that he was asking to represent himself,

that he studied and completed some law-related classes and relevant issues, and that he is making this decision freely and that it reflects his personal desire. The court ruled that the Defendant has effectively waived his right to self-representation, and that Defendant's "conduct will be obstreperous and manipulative enough to justify denying his request to proceed pro se." (Da501 at 14:21-15:15). Upon making this ruling, the court stated that they would wait for the jury members to come into the courtroom, with the court hoping that they will begin with jury selection within the next 10 to 15 minutes. (Da504 at 15:18-21). The Court and counsel conducted jury *voir dire* and a jury was sworn in before breaking for lunch at approximately 2:15 p.m. (Da489).

The events from the week prior to Defendant's trial date, when he was moved from the jail in Hudson County to Monmouth County Correctional Institution (MCCI), are also relevant to his state of mind at this time. At MCCI Defendant was placed on 22-hour-a-day solitary lockdown related to the COVID-19 pandemic, was denied his sleeping medication, and witnessed an inmate suicide just two days prior to his trial. (Da572-574).

At this point, hours after being denied the right to represent himself *pro se* and on the cusp of being forced to start a jury trial being represented by a lawyer whose strategy the Defendant did not agree with, Defendant discussed the option of a plea agreement with his prior appointed counsel in his holding

23

cell.  Prior counsel, admittedly unfamiliar with the federal rules applicable to

waiver of pretrial motions, did not advise defendant that all of the pretrial issues

he wished to challenge were considered waived unless he explicitly reserved the

right to do so because counsel was unsure at the time. (Da577).  No such

reservation was made or attempted to be negotiated into the plea agreement.

Thereafter, Defendant was presented with and signed a written plea

agreement and an Application for Permission to enter a Plea of Guilty.

At approximately 3:55 p.m., the Court held a change of plea hearing and

accepted Defendant's guilty plea to three of the thirty-three counts and the jury

was discharged.  (Da489).  During the plea colloquy, the court asked if there is

any appellate waiver in this document or [plea] agreement, prior counsel

responded that there is not [any appellate waiver].  The court confirmed,

"[O]kay.  So there's no waiver of appeal."  (Da514 at 9:1-5).  Based on

counsel's prior equivocal advice and current statement that "there was not any

appellate waiver," defendant understood this to mean that he would still be

permitted to appeal the several pretrial issues that impacted his case, and

entered the plea based on that incorrect belief and incomplete advice from

counsel.

In prior counsel's May 19, 2022 letter to the defendant, prior counsel

admitted that he had not been sure whether federal law precluded the appeal of

pretrial issues even though the plea agreement contained no appellate waiver, and that at the time he counseled Defendant that he "had in the back of my mind" that such might be true or that he might be thinking of "state court" cases.  (Da 580-581). He therefore did not provide – and by his own admission was incapable of providing – Defendant with complete, accurate advice on the ramifications of pleading guilty to a plea agreement that did not specifically permit the appeal of the pretrial motions.

Upon learning that he would not be able to seek appellate review of the court's pretrial rulings, most importantly denying defendant's request to represent himself *pro se*, Defendant promptly requested that his guilty plea be withdrawn.  Defendant made clear in his requests to the court that the misleading, equivocal advice of prior counsel led Defendant to mistakenly believe that at the time of his guilty plea he was still able to appeal pretrial issues to higher courts.  (Da531).

Under Third Circuit case law a defendant may withdraw a guilty plea as involuntary or unknowing due to ineffective assistance of counsel if "(1) the defendant shows that his attorney's advice was under all the circumstances unreasonable under prevailing professional norms [and] (2) the defendant shows that he suffered sufficient prejudice from his counsel's errors." Jones, 336 F.3d at 253-254.

In a case with analogous facts to this one, the Third Circuit found that the defendant was entitled to withdraw his guilty plea based on counsel's incorrect advice regarding the availability of a sentencing reduction based on his lack of familiarity with a point of law relevant to the defendant's plea.  United States v. Bui, 769 F.3d 831 (3d Cir. 2014).  The Court held that in the plea context, "counsel is required to give a defendant enough information 'to make a reasonably informed decision whether to accept a plea offer.'"  Id. at 835 (quoting Shotts v. Wetzel, 724 F.3d 364, 376 (3d Cir. 2013)). The Court further stated that counsel's "lack of familiarity with an eighteen-year-old precedent and his erroneous advice based on that lack of familiarity demonstrate counsel's performance fell below prevailing professional norms." Bui, 769 F.3d at 835. In short, "[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance." Ibid.

Additionally, in Bui, the district court's plea colloquy did not remedy the error by explaining that the court was permitted to depart upwards or downwards from the sentencing guidelines.  Id. at 836. While the statements were accurate under normal circumstances, considering the record as a whole the court found them to be problematic insofar as they reinforced the erroneous advice provided by counsel.  Id. at 835-836.

Here, the admittedly incomplete and equivocal advice defendant's prior counsel provided regarding the meaning of "appellate waiver", was unreasonable and prejudiced the Defendant by causing him to lose the ability to challenge critical pretrial rulings.

In addition, when asked by the Court at the plea hearing to confirm whether there was "any appellate waiver" in the plea agreement, defense counsel simply answered "[t]here is not." (Da514 at 9:1-5). Defense counsel never mentioned on the record that, despite there being no appellate waiver in the plea agreement, he was concerned that Defendant nevertheless was, or even might be, precluded from contesting pretrial motions on appeal because the plea agreement did not specifically reserve such a right for Defendant; that he was concerned that without explicitly reserving the right, the decisions on pretrial motions are considered waived.  Prior counsel did not ask for time to research the issue, or a brief recess to confirm his hunch that the Defendant may be waiving his right to appeal critical pretrial issues including his right to self-representation.

The Government was similarly silent on that issue at the plea hearing. The silence of both defense counsel and the Government, along with the Court's confirming with defense counsel that there was no appellate waiver in the plea agreement, reinforced Defendant's understanding and belief at the time

of his plea that he would be able to appeal all issues important to him, including the issues contained in his pretrial motions. His plea was thus not fully knowing and intelligent regarding the ramification of the guilty plea on foreclosing him from appealing the pretrial issues.

That the Defendant consistently espoused his desire to proceed to trial from day one ("I do intend to plead not guilty and wish to invoke speedy trial rights and demand for jury trial in this matter," (Da46 at 12:7-9)) until after being denied the right to represent himself at the <u>Faretta</u> hearing and relying on prior counsel's incorrect advice further casts doubt on the voluntariness of the plea. <u>United States v. Artabane</u>, 868 F. Supp. 76, 78 (M.D. Pa. 1994) (in granting the defendant's motion to withdraw guilty plea based partly on confusing, incorrect counsel from his defense attorney, concluded that "[i]f we are to lend any credence to Defendant's assertions, and we should for the record plainly chronicles Defendant's reluctance to plea[d] guilty, then we must recognize that the voluntary nature of Defendant's plea is questionable at best.")

The record indicates that Defendant pled guilty at the end of a fast-paced, chaotic day in and out of court and holding cells with an extremely compressed timeline not because he *is* guilty, but because he relied on misleading and incomplete counsel from his attorney at the time. In addition to Third Circuit

law discussed above, case law from other circuits is in accord that such circumstances do not support a knowing and voluntary plea.

For instance, the Ninth Circuit has held that "erroneous or inadequate legal advice" from defense counsel can be a fair and just reason to grant withdrawal of a guilty plea, where the proper advice could have plausibly motivated the defendant not to have pleaded guilty. United States v. McTiernan, 546 F.3d 1160, 1167-1168 (9th Cir. 2008). In that case, where the defendant had pled guilty to making a false statement to a federal agent, defense counsel failed to properly advise the defendant on his right to seek suppression of an incriminating recording seized by the government, which in turn motivated the defendant to plead guilty. Id. at 1168. The court remanded the case for an evidentiary hearing to determine whether the proper advice about the possibility of suppression could plausibly have motivated the defendant not to have pled guilty, which would then provide a fair and just reason to withdraw his guilty plea. Ibid.

In a case where the defendant argued that his plea was involuntary because, on the eve of trial, the district court denied his request to represent himself and therefore in essence forced him into pleading guilty, the Ninth Circuit agreed and held that defendant's plea was involuntary. United States v. Hernandez, 203 F.3d 614, 627 (9th Cir. 2000). The court reasoned that after the

defendant was denied the ability to represent himself, he "was left with the following choice: either plead guilty or submit to a trial in which [he] would be deprived of a fundamental Sixth Amendment right. . . . [T]he district court's refusal to allow [defendant] to exercise the right of self-representation forced him to choose between pleading guilty and submitting to a trial the <u>very structure of which</u> would be unconstitutional." <u>Id.</u> at 626 (emphasis in original).

Here, Defendant's choice was between pleading guilty or going to trial with defense counsel he did not trust and who would not present the defenses he wished his attorney to make. <u>Hernandez</u> is instructive as to the dilemma Defendant faced, which, was a combination of uncertain counsel he received on the ramifications of "no appellate waiver" in the plea agreement and a hectic, hurried day of a <u>Faretta</u> hearing, then denial of the right to represent himself, jury selection, and finally, plea discussions. It is clear from the record that he had no time to think, no time to assess, was certainly tired, not in the proper mental state, and was hurried to decide in the moment.

Finally, in a strikingly similar case, where the Tenth Circuit Court of Appeals held that a guilty plea was not knowing and voluntary based on questionable advice from defense counsel on the consequences of a guilty plea, the court explained:

> [T]he record does not show that [defendant's] attorney
> properly advised him that an unconditional guilty plea

> would limit his right to appeal such that he would have
> waived any right to challenge the denial of his motion
> to suppress on appeal.
>
> Similarly, the Government did not make any statement
> during the change-of-plea hearing to indicate that
> [defendant's] right to appeal would be compromised by
> his guilty plea. Under these circumstances, we hold that
> [defendant] was led, incorrectly, to believe that he
> would retain an unlimited right to appeal following his
> unconditional guilty plea. Thus, [defendant] was
> materially misinformed regarding the consequences of
> his plea. And, because he was 'not fairly apprised of its
> consequences,' his plea did not 'represent[] a voluntary
> and intelligent choice among the alternative courses of
> action.

United States v. Avila, 733 F.3d 1258, 1262-63 (10th Cir. 2013) (internal

citations omitted); see also United States v. Pierre, 120 F.3d 1153, 1156-57

(11th Cir. 1997) (holding that unconditional guilty plea was not knowing and

voluntary, based on defendant's "reasonable (but mistaken) belief that [he] had

preserved . . . speedy trial issues for appeal").

   As was observed by the Tenth Circuit in Avila, the ability or inability to

appeal pretrial motions is a material aspect of the plea agreement.  Defendant's

reliance on prior counsel's advice and his conduct during the plea colloquy led

Defendant to understand he would be able to litigate and appeal adverse pretrial

motions after pleading guilty under the terms of the plea agreement that

preserved his right to appeal.  Defendant's incorrect understanding of a material

aspect of the plea agreement as a result of counsel's ineffectiveness necessarily invalidates Defendant's plea as unknowing.

## B. Defendant presented additional fair and just reasons to withdraw his plea based on the inability to appeal several critical pretrial issues.

While a defendant's reliance on ineffective counsel at the time of the plea is itself sufficient to invalidate the plea, Defendant presented additional arguments below that further underscore the point. Indeed, the prejudicial effect of Defendant's invalid guilty plea cannot be understated as Defendant was denied the right to seek appellate review of several critical pretrial rulings concerning a variety of Defendant's constitutional rights.

Defendant acknowledges that these issues are not properly before this court for review and, accordingly, does not fully brief each issue. Rather, the following discussion of pretrial motions is offered to highlight the fair and just reasons that were presented below justifying withdrawal of Defendant's guilty plea, and the substantial prejudice that Defendant faces because of the district court's erroneous rulings.

### i. Defendant was denied his Sixth Amendment right to self-representation.

The court improperly denied his sixth amendment right of self-representation when he was forced to proceed to trial represented by appointed counsel whose strategy defendant did not agree with on May 17, 2022.

The Sixth Amendment guarantees the right of the accused to "have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  In <u>Faretta v. California,</u> the Supreme Court recognized that this guarantee "does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." 422 U.S. 806, 819 (1975).

This right to self-representation, however, is not boundless. "[I]n order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits . . . associated with the right to counsel." <u>Id.</u> at 835. A defendant must express the desire to proceed pro se "clearly and unequivocally." <u>United States v. Peppers</u>, 302 F.3d 120, 132 (3d Cir. 2002). The trial court must then confirm that "the defendant understands 'the nature of the charges, the range of possible punishments, potential defenses, technical problems that the defendant may encounter, and any other facts important to a general understanding of the risks involved.'" <u>Id.</u> (citation omitted).

Here, Defendant consistently expressed his desire to represent himself throughout this case.  At the <u>Faretta</u> Hearing conducted on May 17, 2022, Defendant knowingly and intentionally waived his right to counsel, confirmed his awareness of the risks involved, and was prepared to comply with the rules of court. The Court ultimately denied Defendant's request to represent himself based on Defendant's past conduct, concluding that his prior outbursts in the

court room were a sufficient predicate to deny his request to represent himself at the outset.

True, "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." <u>Faretta</u>, 422 U.S. at 834. Still, "a trial court should exercise patience in difficult situations," and "should refrain from denying a defendant's initial request to represent himself on this ground where disruption is predicted but has not occurred." <u>United States v. Taylor</u>, 21 F.4th 94 (3d Cir. 2021).

Only in rare cases will a defendant's conduct prove obstreperous enough to justify denying his request at the outset. Examples of conduct that are <u>insufficient</u> to deny the sixth amendment right to self-representation include filing "numerous, nonsensical pleadings," being "uncooperative at times," "repeated, frivolous challenges to the court's jurisdiction, to the government's authority to prosecute, or to the validity of the federal laws" have been found insufficiently disruptive or defiant to deny a defendant's sixth amendment right to self-representation. <u>Taylor</u>, 21 F.4th at 104-105 (collecting cases).

The prior conduct cited by the district court at the <u>Faretta</u> hearing does not serve as a sufficient basis to deny Defendant's Sixth Amendment right to self-representation.

Even acknowledging the latitude that a trial court is accorded in evaluating litigants' behavior, the district court here acted prematurely by denying Defendant his Sixth Amendment right.  Rather than prohibit Defendant from representing himself at this early stage, it should have conducted the requisite inquiry and, if satisfied that he understood the consequences, allowed him to proceed pro se.  If the Court suspected that Defendant would eventually prove disruptive, it could have appointed standby counsel.  See Faretta, 422 U.S. at 834, n.46 (acknowledging that a court may appoint standby counsel "to be available to represent the accused in the event that the termination of the defendant's self-representation is necessary").  Defendant even acknowledged that the option of proceeding with standby counsel was satisfactory at the Faretta hearing – evidencing his cooperative state of mind.  (Da493 at 4:20-21).  Denying Defendant's request to represent himself was an extreme position that was simply not warranted under the circumstances.  Defendant should be permitted to withdraw his guilty plea based on the inability to preserve this pre-trial issue that was unknowingly waived by counsel's failure properly advise the Defendant.

### ii.    Venue was Improper.

Venue in this case was improper based on 18 U.S.C. § 3238.  Section 3238 provides that:

The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, **shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought**; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders, or if no such residence is known the indictment or information may be filed in the District of Columbia.

[18 U.S.C. § 3238 (emphasis added).]

Generally, for domestic crimes committed within the United States, a defendant in a criminal trial has a constitutional right to be tried in the district where his crime was committed.  United States v. Pendleton, 658 F.3d 299, 302-303 (3d Cir. 2011).  While Congress may fix jurisdiction in any district where a "crucial element" of the crime is performed, when Congress has "not indicate[d] where it consider[s] the place of committing the crime to be," the court determines jurisdiction "from the nature of the crime alleged and the location of the act or acts constituting it." Pendleton, 658 F.3d at 303 (citing United States v. Rodriguez-Moreno, 526 U.S. 275, 279 n.1 (1999) (citations and internal quotation marks omitted)).  Unless Congress has designated the venue in the relevant criminal statue, when the crime consists of distinct acts occurring in different places throughout the United States, venue is proper in any district where any part of the crime occurs.  Id. (citing United States v. Lombardo, 241

U.S. 73, 77 (1916)).  See 18 U.S.C. § 3237(a) (Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.)

But where an offense is not committed in any district, or the crux of the offense is committed out of the jurisdiction of any district, 18 U.S.C. § 3238 is the controlling venue provision.  Pendleton, 658 F.3d at 304.  Section 3238 provides that an offense "begun or committed" outside the United States "shall be [prosecuted] in the district in which the offender . . . is arrested."  Id.  This was the position supported by the government in Pendleton, which was ultimately upheld by the Third Circuit.

The Third Circuit held that § 3238 applies even when some of a defendant's offense conduct takes place in the United States.  Pendleton, 658 F.3d at 304-05.  See, e.g., United States v. Levy Auto Parts, 787 F.2d 946, 950-952 (4th Cir.), cert. denied, 479 U.S. 828 (1986) (finding venue proper under § 3238 when conspiracy was "essentially foreign," even when some overt acts occurred inside the United States); United States v. Erwin, 602 F.2d 1183, 1185 (5th Cir. 1979), cert. denied, 444 U.S. 1071 (1980) ("That venue may also be appropriate in another district will not divest venue properly established under §

3238."); see also United States v. Bin Laden, 146 F. Supp. 2d 373, 381 n.17

(S.D.N.Y. 2001) (criticizing the Second Circuit's narrow reading of § 3238 in

Gilboe as "myopic" and "directly in conflict with the clear language of the

statute," and noting that the decision "has never been favorably cited or relied

upon" by district courts in the Second Circuit).

Section 3238 provides that an offense "begun or committed" outside the

United States "**shall** be [prosecuted] in the district in which the offender . . . is

arrested." Pendleton, 658 F.3d at 304 (emphasis added). Another option is that

prior to an arrest, an indictment or information may be filed in the district of the

last known residence of the offender. 18 U.S.C. § 3238.

The meaning of shall is clear. Shall "express[es] what is mandatory" or

"used to express a command." Shall, Merriam-Webster Abridged,

https://www.merriam-webster.com/dictionary/shall (last visited July 10, 2024).

United States v. Diaz, 2023 U.S. App. LEXIS 10139. *13-14 (3d Cir. April 26,

2023). The meaning of arrest is clear. The district a defendant is arrested in is

the one "where the defendant is first restrained of his liberty in connection with

the offense charged." United States v. Liang, 224 F.3d 1057, 1061 (9th Cir.

2000) (internal quotation omitted).

Here, similar to the Third Circuit's ruling in Pendleton, assuming the

government's theory of the case is correct, 18 U.S.C. § 3238 is the controlling

venue provision.  We apply the first part of section 3238 because Defendant was arrested on the island of Saipan, in the District of the Northern Mariana Islands, on September 28, 2019.  (Da68).  The arrest was due to allegations of criminal conduct, specifically transmitting communications that contained threats to injure a person.  The allegation was that the Defendant began the transmission of these threatening communications from Ireland, United Kingdom, which were subsequently received in Monmouth County, New Jersey, and elsewhere in violation of 18 U.S.C. § 875(c).  Section 3238 is triggered because the Defendant's actions began outside the United States.

Defendant was arrested prior to the indictment, which was returned on October 31, 2019, after the date of arrest.  As such, under the mandatory "shall" requirement of section 3238, Defendant had to be prosecuted in the District of the Northern Mariana Islands, the district in which he was arrested – but he was not.[2]

---

[2] Although not controlling on the argument of New Jersey being the wrong venue, it is worth noting that if the government wanted venue to be in New Jersey, they had an option provided that would have satisfied section 3238. Prior to the arrest in Saipan, the government could have extradited defendant from Ireland and flown him to Newark, New Jersey, which would have made the New Jersey the district in which the offender is first brought; the government, however, failed to do so.

Defendant should be permitted to withdraw his guilty plea to pursue this pretrial issue that was extinguished upon entering the guilty plea based on the incorrect advice of counsel.

### iii. Defendant was denied his Fifth Amendment Due Process Rights and Sixth Amendment Speedy Trial Rights.

Defendant made several pretrial motions based on the inordinate delays in his case that require appellate review.

Specifically, Defendant previously moved to dismiss the indictment for Fifth Amendment Due Process Violation based on the unreasonable prearrest delay. Defendant credibly argued that the Government's intentional and tactical preindictment delay resulted in substantial prejudice to Defendant. (Da332-350).

In the Third Circuit, to warrant a dismissal based on pre-indictment delay pursuant to the Fifth Amendment's Due Process Clause, a defendant bears the burden of establishing: "(1) that the Government intentionally delayed bringing the indictment to gain some advantage over him; and (2) the intentional delay caused the defendant actual prejudice." United States v. Ismaili, 828 F.2d 153, 167-68 (3d Cir. 1987) (citations omitted).

In this case, the Government sought and obtained a criminal complaint and arrest warrant charging Defendant with threatening to harm a specific unidentified individual in Monmouth County, New Jersey from Ireland on

October 6, 2016.  Three years later, on September 28, 2019, Defendant was arrested on the Island of Saipan, District of the Northern Mariana Islands. Thereafter, the Government caused a thirty-three-count indictment to be returned.  Twenty-nine of the thirty-three counts in the indictment involved events that were alleged to have occurred within three months of the issuance of the complaint – more than three years prior.  (Da128-154).  It is evident that for three years the Government made little to no effort in locating and apprehending Defendant, despite conclusively knowing he traveled to Ireland before the criminal complaint was issued.  (Da342-343). The Government's intentional and excessive pre-indictment delay caused the loss of exculpatory digital evidence that existed on Defendant's digital devices resulting in prejudice to the Defendant and requiring dismissal under the Fifth Amendment. (Da344-345).  Ismaili, 828 F.2d at 167-68.

Defendant also moved twice to dismiss the indictment for Sixth Amendment Speedy Trial violations. (Da279; Da363).  The Sixth Amendment and the Speedy Trial Act, 18 U.S.C. §§ 3161-3174, protect a criminal defendant's right to a speedy trial.  The Sixth Amendment mandates that "in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial."  To determine whether a delay between accusation and conviction violates the speedy trial right, the Supreme Court crafted a balancing test that

considers the following four factors: (1) the length of the delay; (2) the reason for the delay; (3) whether and to what extent the defendant asserted his speedy trial right; and (4) the prejudice to the defendant caused by the delay. Barker v. Wingo, 407 U.S. 514, 530 (1972). Additionally, the Speedy Trial Act sets forth two clear time limits: an information or indictment must follow within 30 days of arrest, and a trial must begin within 70 days of indictment or arraignment.

Defendant invoked his speedy trial rights often throughout the proceedings, (Da35 at 12:7-9; Da76 at 6:16-20; Da86 at 8:10-12; Da193 at 39:13-16) and through two detailed motions that set forth detailed timelines of the delays. (Da279-331; and Da363-402). Importantly, the remedy for a violation of a defendant's Sixth Amendment speedy trial right is a dismissal of the charges with prejudice. See Strunk v. United States, 412 U.S. 434, 440 (1973) (holding that remedies other than dismissal with prejudice do not fully vindicate the purposes of the speedy trial protection, including protection against the stress and disruption of prolonged accusation and the "prospect of rehabilitation"); 18 U.S.C. § 3162.

Again, while acknowledging that these issues are not properly before this Court, Defendant submits that the facts demonstrate the prejudice Defendant has been exposed to from the outset of this case, and which he intended to appeal as part of his reason for pleading guilty.

**C. Defendant's request to withdraw his plea was supported by assertions of factual and legal innocence.**

Defendant strenuously asserted his innocence throughout the pendency of this case and his plausible defenses to the charges supported the granting of his motion to withdraw his plea.

When his second trial began on May 17, 2022, the record supports the conclusion that Defendant pleaded guilty not because he *is* guilty, but because he was unable to represent himself and thus was unable to present the defenses he strongly believed would prove his innocence, as well as because his former counsel, during their brief discussion about the ramifications of the plea offer, led him to understand he would be able to litigate and appeal adverse pretrial motions <u>after</u> pleading guilty under the terms of the plea agreement that preserved his right to appeal.

Defendant was clearly focused on there being no appellate waiver, not on the fact that he also had to answer many factual basis questions, as shown by his very brief and mostly one-word responses to the questions posed to him during the change of plea hearing. (Da506-529). Defendant's claim of innocence was further supported by his repeated, consistent assertions of innocence in his correspondence to the Court so soon after the entry of the guilty plea. (Da532; Da533; Da535).

Defendant again asserted his innocence in his Certification filed with his Motions to Withdraw his guilty plea and presented plausible defenses, including that he was not in the United States when these offenses occurred and that he too is a victim of a crime perpetrated on the alleged victims in this matter by an unknown third-party. (Da571-572). Defendant's asserted defenses include alternate, exculpatory explanations in response to the digital evidence that the Government indicated it would proffer at trial in an attempt to carry its burden to prove beyond a reasonable doubt that Defendant was the person "behind the keyboard" or "behind the phone call." Digital evidence can be rebutted by alternate explanations, including the fact that IP addresses can be masked, spoofed, concealed, or hidden; digital accounts and devices can be hacked or compromised; and digital evidence can be difficult to authenticate, especially if that evidence originated from entities outside the United States. (Da572). Such evidentiary issues lend credibility to his claimed defenses and his innocence.

Defendant also asserted credible legal innocence arguments. Defendant's pretrial motions, for which he fought to preserve his right to appeal, include the legal innocence arguments that the Indictment must be dismissed: (1) because of the Government's failure to comply with Rule 5.1 of the Federal Rules of Criminal Procedure at the inception of this case (Da202-215); (2) must be dismissed based on violations of his Sixth Amendment and statutory rights to a

speedy trial (Da282-331; Da363-402); and (3) must be dismissed based on violations of his Fifth Amendment Due Process rights to a speedy trial, which include excessive pre-indictment and post-indictment delay (Da333-350). These are not frivolous issues and are based in law and fact.

Due to his repeated assertions of innocence, "buttressed" by facts in the record and by his reasonable defenses, and to the confusing nature of the plea agreement that was hashed out during the unusually hectic start of his second trial, Defendant should have been permitted to withdraw his guilty plea.

## POINT II

### THE SENTENCE OF 240 MONTHS WAS EXCESSIVE AND UNREASONABLE WHEN CONSIDERING § 3553 FACTORS.

This Court reviews a sentence for reasonableness. United States v. Cooper, 437 F.3d 324, 329 (3rd Cir. 2006). Additionally, this Court exercises plenary review over a district court's interpretation of the United States Sentencing Commission Guidelines (USSG). United States v. Grier, 475 F.3d 556, 570 (3d Cir. 2007) (en banc). Factual findings relevant to the guidelines are reviewed for clear error. Ibid.

The defendant submits that a sentence of 240 months, beyond the applicable guideline range and beyond the additional upward variance requested

by the US Attorney's Office, was excessive and unreasonable. Defendant

contends that the excessive sentence resulted from a failure to properly weigh §

3553 factors, of utmost importance being defendant's total criminal history

score of zero and documented history of poor mental and emotional health.

Further, the district court's upward adjustment for obstruction of justice applied

pursuant to USSG §3C1.1 (Da1021, ¶ 113) and six-level offense conduct

enhancement applied pursuant to USSG § 2A6.1(b)(1) (Da1023, ¶ 122) were

improper.

Under § 3553(a), "[t]he Court shall impose a sentence sufficient, but not

greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C.

§ 3553(a). Those purposes are "(A) to reflect the seriousness of the offenses, to

promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct; (C) to protect the public

from further crimes of the defendant; and (D) to provide the defendant with

needed educational or vocational training, medical care, or other correctional

treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). In

determining that sentence, this Court must consider "the nature and

circumstance of the offense and the history and characteristics of the

defendant," 18 U.S.C. § 3553(a)(1), "the kinds of sentences available,"

§ 3553(a)(3), the Guidelines and Guidelines range, § 3553(a)(4), the

Guidelines' policy statements, § 3553(a)(5), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," § 3553(a)(6), and "the need to provide restitution to any victims of the offense," § 3553(a)(7).

A sentencing court may not "presume that a sentence within the applicable Guidelines range is reasonable," but must consider the § 3553(a) factors. Nelson v. United States, 555 U.S. 350, 353 (2009).

In sum, the sentence imposed by the district court must be reasonable. It must furnish an explanation sufficient for the appellate courts to see that the particular circumstances of the case have been given meaningful consideration under the parameters of 18 U.S.C. § 3553(a). United States v. Levinson, 543 F.3d 190, 196 (3rd Cir. 2008). The touchstone of reasonableness is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.SC. § 3553(a) and whether the reasons cited are logical and consistent with the facts. United States v. Tomko, 562 F.3d 558, 567 (3rd Cir. 2009). Substantive reasonableness concerns the length of sentence in light of the factors outlined in 18 U.S.C. § 3553(a). United States v. Sanchez, 517 F.3d 651, 660 (2nd Cir. 2008). Procedural reasonableness involves whether a sentencing judge failed to consider the factors listed in 18 U.S.C. § 3553(a) including the relevant guidelines and policy statements. Ibid.

Here, a review of the Pre-Sentencing Report (PSR) and the sentencing transcript amply demonstrates that the Sentencing Court did not give meaningful consideration to all relevant factors to shape a sentence individualized or personalized to Defendant and imposed a sentence which was unreasonable and excessive.

As an initial matter, it must be noted that after Defendant pled guilty and prior to his sentencing Defendant sought on several occasions to withdraw his guilty plea. Coinciding with Defendant's efforts to withdraw his plea, three separate draft PSRs were prepared for Defendant. Each subsequent draft PSR got progressively worse for Defendant in terms of his alleged sentencing exposure.

The first draft PSR, prepared on 02/27/2023, provided a total offense level of 27. (Da853). With a criminal history category of I, the guidelines range was listed as 70 to 87 months. (Da853, ¶173). No factors were identified that would warrant a departure from the applicable sentencing guideline range. (Da853, ¶173).

The second draft PSR, prepared on 08/03/2023, provided a total offense level of 33, increasing 6 points from the first draft. (Da907). With a criminal history category of I, the guidelines range was now listed as 135 to 168 months, doubling from the first draft. (Da907, ¶181). Again, in this second draft, no

factors were identified that would warrant a departure from the applicable sentencing guideline range. (Da910, ¶198).

The third draft PSR, prepared on 10/25/23, kept the total offense level of 33, however, added an entirely new section on "Factors That May Warrant Departure." (Da978, ¶351; Da981 ¶¶368-370). For the first time it was decided that Defendant's plea and prior conduct now subject him to a maximum of a 5 level offense level increase. (Da981 ¶¶368-370). This is the position that was finalized in the PSR prepared on 11/10/23. (Da1049, ¶351; Da1053, ¶¶368-370).

At the time of sentencing, counsel for Defendant objected to the proposed adjustment for obstruction of justice applied pursuant to USSG §3C1.1. According to the PSR, the obstruction of justice adjustment was recommended based on the communications the Defendant had with his prior counsel, post-plea hearing and pre-sentencing, wherein defendant left "more than 100 voicemail messages of a threatening and intimidating nature."  Counsel for Defendant argued that the "overwhelming aspect of Defendant's messages" was Defendant's belief that "they [Defendant and prior counsel] disagree on strategy, cannot work together, and he believed counsel was ineffective." (Da757-758, 21:23-22:5).

Importantly, there was no evidence put forward that Defendant was acting for any reason other than to ask prior counsel to withdraw based on his belief that prior counsel was not appropriately representing him and was ineffective.  Although Defendant's language was vulgar and distasteful, there is no evidence that these messages were undertaken to obstruct or impede the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense. Applying the two-point enhancement for Defendant seeking to be appointed new counsel because he believed, whether correctly or not, that prior counsel was providing ineffective assistance is contrary to the purpose of the sentencing adjustment – which is "not intended to punish a defendant for the exercise of a constitutional right."  USSG § 3C1.1, comment. (n.2).

The U.S. Attorney's Office separately recommended the obstruction of justice adjustment based on the Defendant's "feigning of mental incompetence in order to delay or avoid his trial and/or punishment."  Counsel for Defendant objected to this justification as well, through which the Government (not the probation office) appear to seek a lengthier sentence for the Defendant because of the delay in proceedings resulting from the two competency evaluations that Defendant did not seek or request.  (Da759-760, 23:1-24:9).

At the time of sentencing, counsel for Defendant also objected to the application of the six-level enhancement pursuant to USSG §2A6.1(b)(1) which was recommended by the Government and the PSR for Count 4. The enhancement applies to offense conduct evidencing an intent to carry out a threat in violation of 18 U.S.C. 875(c).

Here, the conduct used to justify the enhancement is not itself a violation of 18 U.S.C. 875(c), which requires a communication containing any threat to kidnap or injure the person of another. Paragraphs 48 and 49 of the PSR describe the alleged activity of Defendant on 9/2/16 calling the police department and stating "I'm calling because I, I, I got in a fight with my wife and now she's not moving . . . I have a gun, I think I'm gonna kill myself now." (Da1003, ¶48). According to paragraph 49 the police responded and determined it was a "swatting" incident. (Da1003, ¶49). As counsel argued at the sentencing hearing, the behavior described in paragraphs 48 and 49 does not justify the six-point enhancement for Count 4. (Da767-768, 31:24-32:15).

Based on the above objections, counsel for Defendant argued that "the total offense level should be 27, and, with a criminal history category of one, the correct guidelines for imprisonment range would be 70 to 87 months." (Da771, 35:10-13). However, the Sentencing Court, having found both enhancements applied, stated as follows:

> Based on my rulings, that's why I'm adopting the
> calculation that is in the final presentence report that
> was prepared on November 10th of 2023. That means
> the offense level will be 33. Criminal history category
> is one. That results in an advisory guidelines range of
> 135 to 168 months.

(Da772, 36:10-13).

The Government requested an additional upwards variance of the offense level to 36, and a sentence of 210 months within the middle of the advisory guideline range of 188 to 235 months.  (Da774, 38:9-15).

While the Sentencing Court noted its obligation to look at the § 3553(a) factors, (Da791, 55:6-7), a review of the record demonstrated that the judge did not give meaningful consideration to all relevant factors and imposed a sentence which was unreasonable and excessive.  Defendant's minimal criminal history and mental and emotional health are factors the Court should have considered in arriving at an appropriate sentence, as noted in the presentence report and defense sentencing submission.  Ignoring these factors, the Court issued a sentence beyond the guidelines and beyond the government's request for an upward variance, for the statutory maximum term of 240 months imprisonment.

This sentence is both unreasonably excessive given the factors ignored by the Court and should be set aside.

## <u>CONCLUSION</u>

Defendant was denied his substantial rights throughout the entirety of this case.  Defendant's trial counsel objectively performed far below the level of assistance that is constitutionally required.  This has been illustrated through the failure to make certain dispositive motions and the failure to advise of the impact of a guilty plea.

Notwithstanding Defendant's position that his guilty plea is invalid and should have been withdrawn, Defendant further submits that this sentence of 240 months imposed below was excessive and should be set aside.


DUGHI, HEWIT & DOMALEWSKI
Attorneys for Defendant/Appellant,
Eric G. Hafner

*/s/ Brandon D. Minde*

Brandon D. Minde

Date:  August 29, 2024

## CERTIFICATION OF BAR MEMBERSHIP

1.    I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

2.    Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated:  August 29, 2024                     */s/  Brandon D. Minde*
                                             Brandon D. Minde

## CERTIFICATION OF WORD COUNT

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 11,514 words, excluding tables and certifications.

Dated:  August 29, 2024                     */s/  Brandon D. Minde*
                                             Brandon D. Minde

## CERTIFICATION OF COMPLIANCE-ELECTRONIC FILING AND IDENTICAL COMPLIANCE OF BRIEFS

I, Brandon D. Minde, hereby certify that on August 29, 2024, Appellee's Brief was served electronically on all counsel of record via ECF. The text of the electronically filed Brief and the text of the hard copies of the Brief are identical.

Dated:  August 29, 2024                     */s/  Brandon D. Minde*
                                             Brandon D. Minde

## CERTIFICATION OF VIRUS CHECK

I, Brandon D. Minde, hereby certify that a virus check has been performed on the PDF file containing the Brief.  The virus check was completed using Symantec Endpoint Protection Version 14.3.

Dated:  August 29, 2024                        */s/  Brandon D. Minde*
                                                        Brandon D. Minde


## CERTIFICATE OF FILING AND SERVICE

I, Brandon D. Minde, hereby certify that on August 29, 2024, I caused Appellant's Opening Brief to be filed with the Clerk of the United States Court of Appeals for the Third Circuit by personally transmitting the electronic PDF brief on all counsel of record via ECF, and by personally filing seven copies of the Brief, and x copies of the Appendix, with the United States Postal Service as postage-prepaid first-class mail.

Dated:  August 29, 2024                        */s/  Brandon D. Minde*
                                                        Brandon D. Minde

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Court of Appeals No.:  23-3258

_____

UNITED STATES OF AMERICA,

        Appellee,

v.

ERIC G. HAFNER,

        Appellant.

_____

On Appeal from a Final Judgment of the
United States District Court for the
District of New Jersey
(D.N.J. Criminal Number: 3:19-cr-00790)

Sat Below:  Honorable Michael A. Shipp
                  Honorable Zahid N. Quraishi

_____

APPENDIX
Volume I
(Da 0001-0029)

                Brandon D. Minde, Esq.
                DUGHI, HEWIT & DOMALEWSKI
                Attorneys for Appellant
                340 North Avenue
                Cranford, New Jersey 07106
                (908) 272-0200
                NJ Bar No. 027972004

TABLE OF APPENDICES

<u>VOLUME I</u> (Da 0001-0029)

<u>Page</u>

1.  Notice of Appeal ........................................................ 0001

2.  Order Denying Motion to Withdraw Plea of Guilty entered
    November 24, 2022 .................................................. 0002

3.  Memorandum Opinion of Judge Michael A. Shipp Denying
    Defendant's Motion to Withdraw Plea of Guilty entered
    November 24, 2022 .................................................. 0003

4.  Judgment as to Eric G. Hafner entered December 11,
    2023 ..................................................................... 0024

<u>VOLUME II </u>(Da 0030-0227)

5.  Unsealed Criminal Complaint ................................... 0030

6.  Transcript of Initial Appearance held on September 30, 2019
    in District of Northern Mariana Islands
    (Case 3:19-cr-00790-MAS, ECF 26-2) ................................... 0035

7.  Order Extending the Time Period to Conduct a Preliminary
    Hearing Entered October 17, 2019 ........................... 0068

8.  Transcript of Initial Appearance held on October 23, 2019
    in District of New Jersey ........................................ 0071

9.  Transcript of Defendant's Application to Recuse Magistrate
    Judge Bongiovanni held on October 29, 2019 ........................ 0079

10. Transcript of Preliminary Hearing Held on October 29,
    2019 ..................................................................... 0089

11. Indictment .............................................................. 0128

12. Transcript of Arraignment Hearing, November 12, 2019
Before Judge Michael A. Shipp.................................................. 0155

13. Defendant's Motion to Dismiss filed January 23, 2020.......... 0202
A. Declaration of Eric Hafner .................................................. 0203
B. Declaration of M.C. .......................................................... 0205
    i.     *Exhibit A omitted as duplicative of Da 35.............. 0207
    ii.    *Exhibit D omitted as duplicative of Da 68.............. 0214
C. Brief included in Appendix pursuant to L.A.R. 30.3(a)...... 0215


VOLUME III (Da 0228-0413)


14. Defendant's Motion to Dismiss and for Disqualification ....... 0228
A. Brief included in Appendix pursuant to L.A.R. 30.3(a)...... 0229

15. Defendant's Omnibus Pretrial Motions.................................. 0244
A. *Brief omitted pursuant to pursuant to L.A.R. 30.3(a) ....... 0246

16. Transcript of Motion Hearing before Judge Michael A. Shipp,
March 3, 2020.......................................................... 0247

17. Order Denying Defendant's Motions, ECF 26-27, and
Granting in part and denying in part Defendant's Omnibus
Motion, ECF 28, dated March 3, 2020..................................... 0277

18. Defendant's Motion to Dismiss on Speedy Trial Grounds ..... 0279
A. Declaration of M.C. ......................................................... 0280
B. Brief included in Appendix pursuant to L.A.R. 30.3(a)...... 0282
    i.     *Exhibit A omitted as duplicative of Da 30 ........ 0299
    ii.    *Exhibit F omitted as duplicative of Da 71 ......... 0330
    iii.   *Exhibit G omitted as duplicative of Da 155 ...... 0331

19. Defendant's Motion to Dismiss Due Process.......................... 0332
A. Brief included in Appendix pursuant to L.A.R. 30.3(a)...... 0333
    i.     *Exhibit A omitted as duplicative of Da 30.............. 0346
    ii.    *Exhibit B omitted as duplicative of Da 128............ 0347
    iii.   *Exhibit C omitted pursuant to F.R.A.P. 30(d) ........ 0348
    iv.   *Exhibit D omitted pursuant to F.R.A.P. 30(d) ........ 0349

v.      *Exhibit E omitted pursuant to F.R.A.P. 30(d)......... 0350

20. Order Denying Defendant's Motions to Dismiss, ECF 35 &
46, Entered November 30, 2020................................................ 0351

21. Memorandum Opinion Dated November 20, 2020 Denying
Defendant's Motions to Dismiss on Speedy Trial Grounds
and Due Process, ECF 35 & 46 ................................................ 0352

22. Defendant's Motion to Dismiss on Speedy Trial Grounds ..... 0363
A. Brief included in Appendix pursuant to L.A.R. 30.3(a)...... 0364
B. Declaration of M.C. ........................................................... 0394
i.      *Exhibit A omitted as duplicative of Da 35 ........ 0396
ii.     *Exhibit B omitted as duplicative of Da 209....... 0397
iii.    *Exhibit C omitted as duplicative of Da 213....... 0398
iv.     *Exhibit D omitted as duplicative of Da 68 ........ 0399
v.      *Exhibit E omitted as duplicative of Da 71 ......... 0400
vi.     *Exhibit F omitted as duplicative of Da 79 ......... 0401
vii.    *Exhibit G omitted as duplicative of Da 155 ...... 0402

23. Memorandum Opinion Dated May 10, 2021 Denying
Defendant's Motion to Dismiss on Speedy Trial Grounds ...... 0403

24. Order denying Defendant's Motion to Dismiss on Speedy
Trial Grounds Entered May 10, 2021 ....................................... 0413

## VOLUME IV (Da 0414-0624)

25. Transcript of May 21, 2021 Telephonic Case Management
Conference before Judge Michael A. Shipp ............................. 0414

26. Minute Entry for Proceedings Held before Judge Michael
A. Shipp on August 9, 2021 ...................................................... 0424

27. Minute Entry for Proceedings Held before Judge Michael
A. Shipp on August 10, 2021 .................................................... 0425

28. Transcript of Jury Trial held on August 10, 2021 before
Judge Michael A. Shipp............................................................. 0426

29. Minute Entry for proceedings held before Judge Michael
     A. Shipp on August 11, 2021 ................................................... 0466

30. Memorandum Order Granting Defendant's Counsel's
     Motion for a Mistrial and Competency Evaluation.................. 0467

31. Transcript of Jury Trial held on August 11, 2021 before
     Judge Michael A. Shipp............................................................ 0475

32. Minute Entry for proceedings held before Judge Michael A.
     Shipp on May 17, 2022.............................................................. 0489

33. Transcript of <u>Faretta</u> Hearing held on May 17, 2022 .............. 0490

34. Transcript of Change of Plea Hearing held on May 17, 2022. 0506

35. Letter from Defense Counsel, MC, filed June 24, 2022.......... 0531

36. Letter regarding appointment of CJA counsel from Defendant
     filed July 19, 2022 ..................................................................... 0532

37. Letter from Defendant filed July 26, 2022 ............................. 0533

38. Letter requesting withdraw guilty plea from Defendant filed
     July 29, 2022.............................................................................. 0535

39. Transcript of Telephonic Status Conferenced held on
     July 28, 2022 before Judge Michael A. Shipp.......................... 0536

40. Appointment of CJA Attorney, TA ......................................... 0550

41. Defendant's Motion to Withdraw Plea of Guilty entered
     September 28, 2022 .................................................................... 0551
     A. Brief included in Appendix pursuant to L.A.R. 30.3(a)...... 0553
     B. Certification of Defendant ................................................... 0571

42. Government's Opposition to Defendant's Motion to Withdraw
     Plea of Guilty............................................................................. 0582

43. Defendant's Reply in Support of Defendant's Motion to
Withdraw His Guilty Plea........................................................... 0603
  A. Supplemental Certification of Defendant............................ 0616
      i. *Attachment B omitted as duplicative of Da 536....... 0621
  B. Supplemental Declaration of Counsel................................ 0623


VOLUME V (Da 0625-0796)

44. Notice of Motion to Withdraw as Attorney and to be Relieved
as Counsel by T.A...................................................................... 0625

45. Memorandum Order Granting Request that [TA] Relieved as
Counsel as to [Defendant] signed by Judge Michael A. Shipp
on March 13, 2023..................................................................... 0627

46. Motion to Withdraw Plea of Guilty by Defendant Pro Se filed
March 20, 2023.......................................................................... 0630
  A. *Brief omitted pursuant to F.R.A.P 30(a)(1)(B) ................. 0632

47. Defendant's Request to Proceed Pro Se Filed March 27,
2023 .......................................................................................... 0633

48. CJA Appointment of Attorney [B.D.M.] on behalf of
Defendant.................................................................................. 0638

49. Text Order: Denying Defendant's Pro Se Motion to Withdraw
Guilty Plea as Moot .................................................................. 0639

50. Letter from BDM Re: Text Order ECF 181 Entered April 17,
2023 .......................................................................................... 0640

51. Letter Order Granting in part and Denying in part Defendant's
request for Leave to File Additional Motions entered by Judge
Zahid N. Quraishi on May 4, 2023........................................... 0644

52. Defendant's Second Formal Motion to Withdraw Plea of
Guilty Filed June 2, 2023 .......................................................... 0646
  A. Certification of Counsel ...................................................... 0647
  B. Brief included in Appendix pursuant to L.A.R. 30.3(a)...... 0652

53. Order Denying Motion to Withdraw Plea of Guilty by Judge
Zahid N. Quraishi on July 6, 2023 ........................................... 0670

54. Transcript of Oral Opinion as to Motion to Withdraw Plea of
Guilty by Judge Zahid N. Quraishi ........................................... 0671

55. Submission from Defendant entered August 18, 2023 ............ 0685

56. Letter from BDM Seeking Leave to File Motions Based on
Defendant's Request entered August 30, 2023 ....................... 0695

57. Letter Order Denying Defendant's Request for Leave to File
Additional Motions entered by Judge Zahid N. Quraishi
on September 1, 2023 ................................................................ 0732

58. Text Order as to Defendant entered September 26, 2023 ....... 0733

59. Letter from Defendant entered October 12, 2023 ................... 0734

60. Notice of Motion to Withdraw Plea submitted by Defendant
October 13, 2023 ...................................................................... 0735
A. *Brief omitted pursuant to L.A.R. 30.3(a) ........................ 0736

61. Transcript of Sentencing Hearing before Judge Zahid N.
Quraishi on December 7, 2023 ................................................. 0737


VOLUME VI (SEALED) (Da 0797-1066)


62. Order (Under Seal) Concerning Defendant's Further
Competency Evaluation entered October 20, 2021 ................. 0797

63. Memorandum Order (Under Seal) Concerning Defendant's
Competency Evaluation entered May 6, 2022 ........................ 0799

64. Draft Presentence Investigation Report dated February 27,
2023 .......................................................................................... 0814

65. Revised Draft Presentence Investigation Report dated
August 3, 2023 .......................................................................... 0864

66. Revised Draft Presentence Investigation Report dated
    October 25, 2023 ........................................................  0918

67. Final Presentence Investigation Report dated November
    10, 2023 ...................................................................  0989

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
.....................................................................
                                        :CASE NUMBER 3:19-CR-00790-ZNQ-1
UNITED STATES OF AMERICA,               :
                                        : Judge:  Zahid N. Quraishi, U.S.D.J.
v.                                      :
                                        : NOTICE OF APPEAL TO THE
ERIC G. HAFNER,                         : U.S. COURT OF APPEALS FOR THE
                                        : THIRD CIRCUIT
          Defendant.                    :
                                        :
.....................................................................:
```

Notice is hereby given that Eric G. Hafner appeals to the United States Court of Appeals for the Third Circuit from JUDGMENT of the United States District Court, District of New Jersey, signed in this action on December 8, 2023 and filed on December 11, 2023.

DUGHI, HEWIT & DOMALEWSKI
340 North Avenue
Cranford, New Jersey  07016
(908) 272-0200
Attorneys for Jeffrey Burd

*/s/ Brandon D. Minde*

Brandon D. Minde

Dated:  December 26, 2023

G:\18316\18316-Hafner-Notice of Appeal-2023-12-26-BDM.docx

**Da 0001**

Case: 23-3258     Document: 26     Page: 71     Date Filed: 08/29/2024

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA | Civil Action No. 19-790 (MAS) |
| v. | **ORDER** |
| ERIC G. HAFNER | |

This matter comes before the Court on Defendant Eric G. Hafner's ("Hafner") Motion to Withdraw Guilty Plea. (ECF No. 139.) The United States of America (the "Government") opposed (ECF No. 146), and Hafner replied (ECF No. 148). The Court has carefully reviewed the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1, applicable to criminal matters through Local Criminal Rule 1.1. For the reasons set forth in the accompanying Memorandum Opinion and other good cause shown,

**IT IS**, on this 24th day of November 2022, **ORDERED** as follows:

1.      Hafner's Motion to Withdraw Guilty Plea (ECF No. 139) is **DENIED**.

2.      The Court sets Hafner's sentencing for **January 31, 2023, at 10:30 AM**.

3.      The Clerk shall file the Memorandum Opinion under temporary seal. Should neither party file a motion to seal by **December 27, 2022**, the Clerk shall unseal the Memorandum Opinion.

s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Da 0002

Case: 23-3258     Document: 26     Page: 72     Date Filed: 08/29/2024

<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ERIC G. HAFNER | Civil Action No. 19-790 (MAS)<br><br>**MEMORANDUM OPINION**<br>**(Under Temporary Seal)** |

<u>**SHIPP, District Judge**</u>

 This matter comes before the Court on Defendant Eric G. Hafner's ("Hafner") Motion to Withdraw Guilty Plea. (ECF No. 139.) The United States of America (the "Government") opposed (ECF No. 146), and Hafner replied (ECF No. 148). The Court has carefully reviewed the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1, applicable to criminal matters through Local Criminal Rule 1.1. For the reasons below, the Court denies Hafner's Motion.

**I.**   <u>**BACKGROUND**</u>

 Before turning to the facts relevant to Hafner's plea, the Court begins with a brief history of Hafner's conduct throughout this proceeding.

**A.**   **Hafner's History of Obstreperous and Manipulative Conduct**

 The Court begins with Hafner's well-documented history of disruptive conduct. As detailed in its August 11, 2021 Memorandum Order and again in its May 6, 2022 Memorandum Order, the Court has often observed Hafner engage in obstreperous conduct. During the reading of his indictment (which most defendants waive), the Court watched Hafner grin at its reading of the more salacious charges. (Aug. 11, 2021 Mem. Order 1-2, ECF No. 88.) Then, at a later status

**Da 0003**

conference, Hafner became belligerent and began profaning and disrespected the Government's attorneys and the Court. (*Id.* at 2.) That belligerence crescendoed at the opening of the first trial in this case. There, after requesting to proceed pro se, Hafner ranted for minutes about a government conspiracy against him and screamed at the Court for a recusal. (*Id.* at 3-4 ("Defendant was so loud and irate during his tirade that attorneys for the Government and court staff heard Defendant in the corridors outside the courtroom. In addition, several jurors in a soundproof room heard yelling and raised voices emanating from the courtroom.").) The U.S. Marshals became so alarmed that, without prompting from the Court, four of them surrounded Hafner and eventually escorted him out of the courtroom. The Court declared a mistrial.

At the request of trial counsel, the Court ordered a competency evaluation for Hafner. Separate psychologists, Dr. Anna Lawler ("Dr. Lawler") and Dr. Heather Ross ("Dr. Ross"), diagnosed Hafner with malingering, a diagnostic term for faking symptoms. In support of that conclusion, Dr. Lawler relied on Hafner's history of "using mental health symptoms in the past to avoid negative consequences" to conclude that Hafner presented with "overacting of psychosis" and "calling attention to the illness." (May 6, 2022 Mem. Order 3, ECF No. 108 (quoting Lawler Rep. 14-15).)[1] Dr. Ross—who along with staff observed Hafner for two months at the Federal Correctional Institution, Butner—performed several tests on Hafner to confirm the malingering diagnosis. (*Id.* at 4 (citing Ross Rep. 1).) Notably, Dr. Ross performed one test that "raised 'significant concerns' that [Hafner's] understanding of and ability to participate in the legal process

---

[1] Dr. Lawler ultimately declared Hafner incompetent to stand trial because she was unable to "adequately assess [Hafner's] factual and rational understanding of legal proceedings and his ability to adequately participate in his defense." (May 6, 2022 Mem. Order 3 (citing Lawler Rep. 15).) The Court thus agreed with Dr. Lawler's recommendation to "transfer[] [Hafner] to a secure federal facility . . . where he can be assessed for competency through both direct psychological and indirect observation for an extended period." (*Id.*)

**Da 0004**

Case: 23-3258     Document: 26     Page: 74     Date Filed: 08/29/2024

is likely better than what he portrayed during the evaluation." (*Id.* at 5 (quoting Ross Rep. 14).) Dr. Ross also diagnosed Hafner with "other personality disorder, with narcissistic and antisocial traits." (*Id.* at 6.) According to Dr. Ross, that diagnosis meant that Hafner's "maladaptive personality style will likely continue to characterize his functioning in the foreseeable future." (*Id.* (quoting Ross Rep. 17).)

Taken together, Hafner's obstreperous and manipulative conduct led the Court to deny his request to proceed pro se for his second trial. There, the Court detailed numerous instances of Hafner's disruptive conduct, many of which it has outlined above. (*See* May 17, 2022 *Faretta* Hr'g Tr. 12-15, ECF No. 137.) The Court stressed, for example, that "Hafner has materially obstructed a status conference, a trial, and multiple psychological evaluations" and that he "has attempted to manipulate the psychological evaluations by feigning severe mental illness and deficits in legal knowledge." (*Id.* at 14:24-15:4.) These findings led the Court to conclude that "this is not a situation where disruption is predicted"; "[d]isruption has already occurred." (*Id.* at 15:8-10.)

### B.     Hafner's Unconditional Guilty Plea

On the first day of his second try at a trial, after the Court spent a full day empaneling a jury, Hafner pled unconditionally guilty to three counts of a sprawling, thirty-three count indictment. (*See generally* Indictment, ECF No. 12.) Hafner pled guilty to (1) transmitting threatening communications in interstate or foreign commerce, in violation of 18 U.S.C. § 875(c) (Count Four); (2) transmitting threatening communications in interstate or foreign commerce with intent to extort, in violation of 18 U.S.C. § 875(b) (Count Seventeen); and (3) conveying false information concerning the use of an explosive device, in violation of 18 U.S.C. § 844(e) (Count Twenty-Eight). Those counts pertained to four sets of threatening sprees Hafner allegedly engaged in. The more flavorful threats involved killing police officers and judges, planting bombs in law

**Da 0005**

Case: 23-3258     Document: 26     Page: 75     Date Filed: 08/29/2024

firms and courthouses, and selling children into sex slavery after "slicing them up." (Indictment 12.)

Hafner admitted under oath to all these threats and more. At the change-of-plea hearing, the Government (through Assistant U.S. Attorney Ian Brater) elicited the factual basis for the plea from Hafner. Spanning thirteen pages of the hearing transcript, Hafner's admissions ranged from garden-variety death threats to truly disturbing conduct:

> MR. BRATER: . . . Mr. Hafner, on or about July 27, 2016, did you place a telephone call via an internet application to the Bradley Beach Police Department?
>
> THE DEFENDANT: Yes.
>
> MR. BRATER: And during this call, did you state that Terry Browning deserves to get shot?
>
> THE DEFENDANT: Yes.
>
> MR. BRATER: That Terry Browning's minor child will get his head bashed in?
>
> THE DEFENDANT: Yes.
>
> . . . .
>
> MR. BRATER: On or about September 1, 2016, did you place a telephone call via an internet application to the law firm of Shebell & Shebell and speak with Mark Apostolou, Jr.?
>
> THE DEFENDANT: Yes.
>
> MR. BRATER: During this call, did you threaten to kill Mark Apostolou, Jr.?
>
> THE DEFENDANT: Yes.
>
> MR. BRATER: Did you threaten to slice him up and feed him to your dogs?
>
> THE DEFENDANT: Yes.
>
> . . . .

**Da 0006**

Case: 23-3258     Document: 26     Page: 76     Date Filed: 08/29/2024

MR. BRATER: On or about September 7, 2016, did you place a telephone call via an internet application to the law firm of Shebell & Shebell?

THE DEFENDANT: Yes.

MR. BRATER: And during that call, did you tell the person who answered the phone that there was a bomb in the building?

THE DEFENDANT: Yes.

. . . .

MR. BRATER: On or about August 26, 2016, did you send another email to Carrie Drazin with the subject line, "Re: Parenting 101"?

THE DEFENDANT: Yes.

MR. BRATER: And in that email, did you threaten to kidnap and harm Lara Drazin and Kyra Drazin unless the Drazin family paid you $350,000?

THE DEFENDANT: Yes.

. . . .

MR. BRATER: On or about August 30, 2016, did you place a telephone call via an internet application to Ronald Drazin's home?

THE DEFENDANT: Yes.

MR. BRATER: And during that call, did you threaten to set fire to Ronald Drazin's residence?

THE DEFENDANT: Yes.

THE COURT: Did you threaten to rape Lara Drazin?

THE DEFENDANT: Yes.

MR. BRATER: Did you threaten to slit Carrie Drazin's throat?

THE DEFENDANT: Yes.

MR. BRATER: And you threatened to do all that if Ronald Drazin failed to meet your demand to pay $350,000?

THE DEFENDANT: Yes.

**Da 0007**

Case: 23-3258     Document: 26     Page: 77     Date Filed: 08/29/2024

. . . .

MR. BRATER: On or about August 2, 2017, did you send an email to Ronald and Carrie Drazin with the subject line: "Rape Lara, kill Nate, kill Lara"?

THE DEFENDANT: Yes.

MR. BRATER: And in that email, did you threaten to kill the Drazin family because they had not paid you the $350,000 you previously demanded?

THE DEFENDANT: Yes.

. . . .

MR. BRATER: On or about September 3, 2016, did you place a telephone call via an internet application to the Monmouth Park racetrack?

THE DEFENDANT: Yes.

MR. BRATER: During that call, did you tell the person who answered the phone that there was a C-4 bomb planted in the grandstand?

THE DEFENDANT: Yes.

MR. BRATER: And that the bomb was going to explode?

THE DEFENDANT: Yes.

. . . .

MR. BRATER: On or about August 31, 2016, did you place a telephone call via an internet application to the police department in Middletown Township, New Jersey?

THE DEFENDANT: Yes.

MR. BRATER: During that call, did you tell the police that you were John Hayes?

THE DEFENDANT: Yes.

MR. BRATER: Did you tell the police that you had just killed John Hayes's wife?

THE DEFENDANT: Yes.

6

**Da 0008**

Case: 23-3258     Document: 26     Page: 78     Date Filed: 08/29/2024

> MR. BRATER: And did you tell the police that you were holding John Hayes's son Alex hostage at gunpoint?
>
> THE DEFENDANT: Yes.

(May 17, 2022 Plea Hr'g Tr. 10:10-19, 11:21-12:5, 14:1-8, 15:7-14, 15:22-16:11, 17:9-16, 19:22-20:6, 21:20-22:7, ECF No. 126.) By the end of the hearing, no doubt remained that Hafner had pled guilty because he was, in fact, guilty:

> MR. BRATER: Are you pleading guilty to Counts 4, 17, and 28 of the indictment because you are, in fact, guilty of those charges?
>
> THE DEFENDANT: Yes.

(*Id.* at 23:4-7.)

Hafner's plea was also counseled. In an affidavit submitted by Hafner's plea counsel, Mark Catanzaro ("Catanzaro"), Catanzaro details his plea discussions with his client. He reports that on the first day of trial, "Hafner asked [him] to speak with the government about the possibility of a plea agreement." (Catanzaro Aff. ¶ 3, ECF No. 146-1.) Catanzaro complied with his client's request, but the trial-ready Government expressed no interest in a plea deal. (*Id.* ¶ 4.) Hafner then directed Catanzaro to ask the Government if he could plead guilty to three counts of the Indictment; that offer piqued the Government's interest but only if Hafner admitted the factual basis of the remaining thirty counts. (*Id.* ¶ 5.) Hafner agreed to the Government's counter. (*Id.*)

Later that day, the Government sent Hafner and Catanzaro a written plea agreement. (*Id.* ¶ 7.) "During a break in the Court proceedings," Catanzaro reports, "[he] thoroughly reviewed and discussed the written plea agreement with Mr. Hafner." (*Id.*) At some point during these discussions, Hafner became concerned with his ability to appeal pretrial rulings from a guilty plea. (*Id.* ¶¶ 6-7.) Catanzaro advised Hafner that the agreement did not contain an appellate waiver but that the plea may waive Hafner's right to appeal by operation of law. (*Id.* ¶ 7.) To that end, Catanzaro avers that he "specifically and strenuously advised Mr. Hafner, multiple times, not to

sign the plea agreement and enter a guilty plea pursuant to the plea agreement if his ability to appeal the Court's rulings on his pretrial motions was an important factor in his decision to plead guilty." (*Id.*) According to Catanzaro, Hafner understood this advice and "still wanted to proceed with the guilty plea." (*Id.*)

At the change-of-plea hearing, Hafner confirmed that Catanzaro had adequately advised him. Hafner answered, for example, that he had "fully discussed" the charges with Catanzaro and that he was "fully satisfied with the representation and advice" provided by Catanzaro. (Plea Hr'g Tr. 4:5-11.) Catanzaro also represented to the Court that "Hafner indicated his understanding of all the questions" on his application for a guilty plea and that he signed the plea "voluntarily." (*Id.* at 9:14-17.) The Court and the parties also acknowledged that the plea agreement did not contain an appellate waiver. (*Id.* at 8:24-9:5.) And the Court confirmed that Hafner's "willingness to plead guilty here today [was] because [he was] indeed guilty." (*Id.* at 4:12-14.)

**C.      Hafner's Motion to Withdraw Guilty Plea**

About a month after he pleaded guilty, Hafner informed Catanzaro that he intended to withdraw his guilty plea. (June 24, 2022 Letter from Catanzaro 1, ECF No. 116.) That revelation caused Catanzaro to file correspondence with the Court seeking to withdraw as counsel. (*Id.*) The Court then held a status conference on whether to relieve Catanzaro as counsel. Echoing his later affidavit, Hafner explained that he would not have pled guilty had he known he could not appeal the Court's denial of his motion to proceed pro se. (July 28, 2022 Conf. Tr. 9:19-21, ECF No. 138.) Catanzaro recounted that he informed Hafner, before entering the plea, that he was unsure whether "you get to appeal pretrial decisions irrespective of whether there is not a waiver of appeal." (*Id.* at 7:10-12.) He also reported that

> I specifically said do not plead if you are banking on being able to raise the *Faretta* motion on appeal. I said I don't think that's the law, and I think even if there's not a waiver of appeal, which the plea

**Da 0010**

Case: 23-3258    Document: 26    Page: 80    Date Filed: 08/29/2024

> agreement did not have in it, that would be a pretrial motion that was
> not specifically preserved.

(*Id.* at 7:14-19.) Hafner recalled that the plea agreement "did not contain an appellate waiver" and that "[he] was not told otherwise as far as that." (*Id.* at 9:22-23.) Ultimately, the Court relieved Catanzaro and appointed new counsel, Tim Anderson ("Anderson"), for Hafner. (*See id.* at 13:13-14:1; CJA Appointment, ECF No. 129.)[2]

Anderson filed the instant motion along with an affidavit from Hafner. The affidavit asserted Hafner's innocence based on several theories. It provided that "some person or group had to have hacked into my devices and perpetrated the alleged crimes, likely because they wanted to discredit [Hafner's] viable runs for the United States Congress." (Hafner Aff. ¶ 3, ECF No. 139-2.) As to the Government's telephonic evidence, Hafner's affidavit had the answer: "[T]here is deepfake voice technology that can imitate a voice very easily . . . , making it appear that [Hafner] had made the calls." (*Id.*) For good measure, Hafner also asserted a legal defense—that the "statutes charged contain no reference to extraterritorial application." (*Id.*)

Hafner's affidavit also iterates his confusion over the appellate waiver. He avers that he "understood that the plea agreement would not prevent [him] from arguing any and all issues on appeal, including [his] pretrial motions." (*Id.* ¶ 4; *see also id.* ¶ 10 ("Because the plea agreement did not contain an appellate waiver, I firmly believed that the plea agreement allowed me to appeal anything related to my case, including decisions on my pretrial motions.").) The affidavit also alleges that Hafner was "sleep deprived" at the time of his guilty plea and that he was unsatisfied with Catanzaro's representation. (Hafner Aff. ¶ 6.) It further generally complains about this

---

[2] The Court notes that it denied Anderson's motion to be relieved as Criminal-Justice-Act-appointed counsel. Anderson moved the Court to withdraw as counsel "less than a week" after his appointment. (ECF No. 133.) But the Court ruled that Anderson did not demonstrate cause for withdrawal, notwithstanding Hafner's insults about him. (Aug. 25, 2022 Order 2-3, ECF No. 134.)

Da 0011

Case: 23-3258    Document: 26    Page: 81    Date Filed: 08/29/2024

Court's ruling on Hafner's motion to proceed pro se, his solitary-confinement conditions, and trauma from observing an inmate suicide. (*Id.* ¶¶ 6-7.)

Hafner's motion to withdraw echoes his affidavit. It asserts, for example, that Hafner "credibly" asserted his innocence during the first trial by screaming that "[t]his is a case of slander, lies, and deceit upon the Court and upon the jury." (Def.'s Mot. 1, 7, ECF No. 139-1.) It then charges Catanzaro with ineffective assistance of counsel: "Mr. Hafner pleaded guilty at the end of a fast-paced, chaotic day in and out of court and holding cells with an extremely compressed timeline not because he *is* guilty, but because he relied on confusing and incomplete counsel from his attorney at the time." (*Id.*; *see also id.* at 9-16.) The motion also contends that the Government faces no prejudice from trying Hafner a third time because "most if not all of the potential Government witnesses are local and likely available." (Def.'s Mot. 16 (citing *United States v. Artabane*, 868 F. Supp. 76, 79 (M.D. Pa. 1994)).)

## II.   **LEGAL STANDARD**

Federal Rule of Criminal Procedure 11(d) permits defendants to withdraw a plea of guilty "after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "[A] criminal defendant has no absolute right to withdraw a guilty plea . . . ." *United States v. Martinez*, 785 F.2d 111, 113 (3d Cir. 1986) (citations omitted). Rather, defendants bear a "substantial" burden of showing a "fair and just" reason for withdrawal. *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003) (citing, among others, *United States v. Hyde*, 520 U.S. 670, 676-77 (1997)). To that end, "[a] shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Id.* (citation omitted). Nor can defendants withdraw their guilty pleas simply because they feel like it. *United States v. Brown*, 250 F.3d 811, 815 (3d

**Da 0012**

Case: 23-3258   Document: 26   Page: 82   Date Filed: 08/29/2024

Cir. 2001) (citing *Martinez*, 785 F.2d at 113). Instead, courts evaluating withdrawal motions consider three factors: "(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *Jones*, 336 F.3d at 252 (citation omitted).

## III.   DISCUSSION

Hafner asserts that he meets all three factors required to withdraw his guilty plea. The Court concludes otherwise and considers each factor below.

### A.   Hafner Has Not Credibly Asserted His Innocence.

Hafner must "meaningfully reassert his innocence." *Id.* The Court does not consider all assertions equally, however. "[B]ald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea." *United States v. James*, 928 F.3d 247, 255 (3d Cir. 2019) (quoting *Jones*, 336 F.3d at 252). Although Hafner may base his assertions on legal innocence alone, he "must present a *credible* legal claim of legal innocence." *Id.* (citations omitted). And in all events, Hafner's assertions "must be buttressed by facts in the record that support a claimed defense." *Brown*, 250 F.3d at 818 (citation omitted).

Hafner fails to meaningfully assert his innocence. In shotgun fashion, he asserts three factual defenses and two legal ones. Start with the bizarre factual defenses. *First*, borrowing from his screed during the first trial, he implies that a government conspiracy led to the charges against him. (Def.'s Mot. 7-8.) He cites no facts to support this conspiracy nor explains how the conspiracy rendered his guilty plea untrue. *Second*, he asserts—for the first time—that some unnamed individuals "hacked into [his] devices and perpetrated the alleged crimes . . . to discredit [Hafner's] viable runs for the United States Congress." (Hafner Aff. ¶ 3.) But that defense too is bereft of specifics and evidence. Certainly, if Hafner's devices were hacked, trial counsel could have moved

the Court for Criminal-Justice-Act funds for expert analysis of those devices.[3] *Finally*, Hafner asserts that deepfake technology could be responsible for the threatening telephone calls. (*Id.* ¶ 3.) Again, Hafner pinpoints no evidence supporting that claim. And, as mentioned, the Court expects that any deepfake defense would have been fully developed by now because this case proceeded to trial twice.

Hafner's legal defenses are likewise meritless. Hafner asserts that trial counsel could have credibly argued that the statutes he pled guilty under were improperly applied extraterritorially. (*Id.* ¶ 3.) He suggests that "he was not in the United States when these offenses occurred." (Def.'s Mot. 8.) But it doesn't matter where Hafner made the threats from. "If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad . . . ." *United States v. Elbaz*, 52 F.4th 593, 603 (4th Cir. 2022) (quoting *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 337 (2016)). The conduct outlawed by 18 U.S.C. §§ 844(e), 875(b), and 875(c) concerns communications conveyed and transmitted through telephone lines, email messages, and the like.[4] So, Congress envisioned two locations for threatening conduct: where the threat was made *and where the threat was received.*

---

[3] The Court further notes that Hafner's eleventh-hour defense doesn't match up with the timing of his Congressional runs. Hafner ran unsuccessfully in the Republican primary in Hawaii's second Congressional district, which took place on August 13, 2016. He then ran unsuccessfully in the Democratic primary in Oregon's third Congressional district, which took place on May 15, 2018. Almost all the conduct alleged in the Indictment occurred in late August and early September 2016—after Hafner's loss in Hawaii and well before his loss in Oregon. The Court thus struggles to credit Hafner's assertion that any hacking occurred to smear his Congressional campaigns.

[4] The statutory text reflects Congress's insistence on transmission. *E.g.*, 18 U.S.C. § 844(e) (outlawing threats to property with explosives made "through the use of mail, telephone, telegraph, or other instrument of interstate or foreign commerce"); 18 U.S.C. § 875(b) (outlawing "any communication" containing extortive threats to injure others that are "transmit[ted] in interstate or foreign commerce"); 18 U.S.C. § 875(c) (outlawing "any communication" containing threats to injure others "transmit[ted] in interstate or foreign commerce").

**Da 0014**

Case: 23-3258     Document: 26     Page: 84     Date Filed: 08/29/2024

*See Elbaz*, 52 F.4th at 604 ("Transmission of a message in furtherance of the scheme occurs in at least two locations: 'where the wire transmission at issue originated' and where it 'was received.'" (citation omitted)); *Threat*, Black's Law Dictionary (11th ed. 2019) ("A *communicated intent* to inflict harm or loss on another or on another's property . . . ." (emphasis added)). Put differently, Congress countenanced a "permissible domestic application" of 18 U.S.C. §§ 844(e), 875(b), and 875(c) when defendants transmitted threats to victims in the United States.

Here, Hafner pled guilty to three counts that all involved domestic victims. Count Four involved a telephone call and death threat to a Monmouth County attorney and a death threat about a Monmouth County judge. (Plea Hr'g Tr. 11:21-12:14.) Count Seventeen involved an email message to two Monmouth County residents that threatened to kill those residents and their children unless the family paid $350,000. (*Id.* at 16:22-17:8.) Count Twenty-Eight involved a bomb threat to the Monmouth Park Racetrack. (*Id.* at 19:22-20:6.) Unquestionably, Hafner pled guilty to communicating with—and transmitting threats to—victims in the United States. His extraterritorial legal defense is therefore not credible.

In his reply brief, Hafner asserts another legal defense: that the Speedy Trial Act warrants dismissal based on the Court's ends-of-justice continuances due to the COVID-19 pandemic. (Def.'s Reply Br. 6-7, ECF No. 148.) Courts will not entertain "arguments raised for the first time in a reply brief." *Barna v. Bd. of Sch. Dirs. of Valley Sch. Dist.*, 877 F.3d 136, 146 (3d Cir. 2017) (citations omitted); *Cobra Enters., LLC v. All Phase Servs., Inc.*, No. 20-4750, 2020 WL 2849892, at *1 (D.N.J. June 1, 2020) ("[T]his Court will not accept arguments offered for the first time in the reply brief, as they were not properly asserted in the opening brief and [the Government] ha[s] not had the opportunity to respond to them." (citation omitted)). Even if the Court considered Hafner's speedy-trial argument, it would reject it. Courts in this district have soundly rejected the

Case: 23-3258    Document: 26    Page: 85    Date Filed: 08/29/2024

precise type of speedy-trial challenge Hafner now argues. *See, e.g.*, *United States v. Wimbush*, No. 19-134, 2021 WL 1811668, at *5-8 (D.N.J. May 6, 2021) ("The Court disagrees that the delay caused by the COVID-19 pandemic, and the Standing Orders issued in response, have violated [d]efendant's rights under the U.S. Constitution[]."); *United States v. Chu*, No. 19-678, 2021 WL 879905, at *3-5 (D.N.J. Mar. 9, 2021) ("There is simply no basis for the Court to conclude that the Third Extension cannot properly exclude time under the Speedy Trial Act . . . ."). More to the point, this Court has already rejected Hafner's constitutional and statutory speedy-trial arguments. After conducting a thorough analysis under the Speedy Trial Act and *Barker v. Wingo*, 407 U.S. 514 (1972), this Court concluded that Hafner suffered no speedy-trial violation. *United States v. Hafner*, No. 19-790, 2021 WL 1873560, at *3-5 (D.N.J. May 10, 2021). It strains credulity to suggest that Hafner could prevail on a defense that both this Court and this District have consistently rejected.[5]

Because Hafner's defenses are not credible, he has declared nothing more than bald assertions of innocence. He has not met his substantial burden for this factor.

### B.    Hafner Has Not Provided Sufficient Reasons for Withdrawal.

Turning to the second factor, Hafner must show "sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea and reclaim the right to trial." *James*, 928 F.3d at 257 (quoting *Jones*, 336 F.3d at 253). Hafner contends that Catanzaro provided inadequate advice about the Government's plea agreement as to the appellate waiver. (Def.'s Mot. 9-16.) Hafner does not dispute that

---

[5] The Court also notes that the out-of-district case Hafner relies on, *United States v. Olsen*, --- F. Supp. 3d ---, 2022 WL 4493853 (C.D. Cal. Aug. 22, 2022), postdates his second trial and his guilty plea. At the time of Hafner's second trial, the Ninth Circuit had reversed a prior district court disposition in the *Olsen* litigation, largely on the same reasoning of the cases in this District. *See United States v. Olsen*, 21 F.4th 1036, 1044-47 (9th Cir. 2022).

Da 0016

Case: 23-3258     Document: 26     Page: 86     Date Filed: 08/29/2024

Catanzaro equivocated about whether Hafner waived certain arguments on appeal by operation of law. (Hafner Aff. ¶ 10 ("Mr. Catanzaro had told me just prior to the plea hearing, when discussing the plea agreement, that he was not sure, but thought the plea agreement's lack of including my specific right to appeal pretrial motions *may* prevent me from appealing those issues.").) But, according to Hafner, Catanzaro should have affirmatively informed him that an unconditional guilty plea waived his right to appeal non-jurisdictional pretrial rulings (such as the Court's ruling on Hafner's motion to proceed pro se). (Def.'s Mot. 9-10.) The Court is not convinced that Catanzaro provided constitutionally defective advice or that Catanzaro's advice warrants withdrawal of the guilty plea.

To start, Catanzaro did not provide ineffective assistance of counsel. In the plea context, ineffective assistance occurs when "(1) the defendant shows that his attorney's advice was under all the circumstances unreasonable under prevailing professional norms; and (2) the defendant shows that he suffered 'sufficient prejudice' from his counsel's errors." *Jones*, 336 F.3d at 253-54 (citations omitted). As to the first prong, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). In addition, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* As to the second prong, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Heeding these mandates from the Supreme Court, the Court concludes that Catanzaro did not provide unreasonable advice by equivocating on whether Hafner was waiving his right to

Da 0017

Case: 23-3258     Document: 26     Page: 87     Date Filed: 08/29/2024

appeal pretrial rulings. For one, the Government did not provide Hafner—nor did the Court consent to—a conditional guilty plea, which would have expressly preserved his right to appeal pretrial rulings. *See* Fed. R. Crim. P. 11(a)(2). Conditional guilty pleas cannot waive a defendant's right to appeal the carved-out pretrial rulings because the Government "acquires (no) legitimate expectation of finality in the conviction." *United States v. Moskow*, 588 F.2d 882, 887 (3d Cir. 1978) (quoting *Lefkowitz v. Newsome*, 420 U.S. 283, 289 (1975)).

Moreover, because Hafner pled unconditionally guilty, he waived his right to appeal most pretrial rulings. "It is well established that a criminal defendant's unconditional, knowing and voluntary plea of guilty waives all non-jurisdictional issues." *Washington v. Sobina*, 475 F.3d 162, 165 (3d Cir. 2007) (collecting cases). In other words, regardless of whether the plea agreement contains an appellate waiver, defendants' act of pleading guilty waives the right to challenge pre-plea constitutional defects. That's because "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also Menna v. New York*, 423 U.S. 61, 62 n.2 (1975) ("A guilty plea . . . renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established."). The Third Circuit has interpreted the waiver of pre-plea constitutional violations broadly. *See United States v. Khattak*, 273 F.3d 557, 561 (3d Cir. 2001) (noting that guilty pleas waive as a matter of law "the right to a jury trial, the right to confront and cross-examine witnesses, and the right against self-incrimination," and can waive the "right[] against double jeopardy and [the] Sixth Amendment right to counsel" (citations omitted)).

What does all this talk of waiver mean? It means that Catanzaro did not provide unreasonable advice. He advised Hafner that "[he] believed that the entry of a guilty plea, without

**Da 0018**

Case: 23-3258     Document: 26     Page: 88     Date Filed: 08/29/2024

explicitly reserving the right to appeal pretrial rulings, constitutes a waiver of the defendant's right to appeal those pretrial rulings." (Catanzaro Aff. ¶ 7.) That is correct advice. Under the Supreme Court and Third Circuit precedent cited above, a valid guilty plea waives non-jurisdictional pre-plea defects, even if those defects were constitutional in nature. Catanzaro also wisely equivocated as to Hafner's concern about the appealability of the Court's ruling on the motion to proceed pro se. The Third Circuit has not squarely held that a defendant can waive the right to self-representation by pleading guilty.[6] Thus, Catanzaro told Hafner that he was unsure and advised Hafner "not to sign the plea agreement and enter a guilty plea pursuant to the plea agreement if his ability to appeal the Court's rulings on his pretrial motions was an important factor." (Catanzaro Aff. ¶ 7.) Hafner voluntarily decided to plead guilty anyway. The Court fails to see how any of Catanzaro's advice fell below a professional standard or was in any way constitutionally defective.[7]

The Court also notes that it is careful to view Catanzaro's advice through the lens he faced at the time he advised Hafner of the plea. Alongside that view, the Court does not pay undue

---

[6] As the Government notes, however, four other circuits have. *E.g.*, *United States v. Dewberry*, 936 F.3d 803, 805-07 (8th Cir. 2019) ("[W]e conclude Dewberry waived his right to bring his Sixth Amendment claim unless he can show us on the specific facts of his case that he did not enter the plea knowingly and voluntarily."); *United States v. Moussaoui*, 591 F.3d 263, 279-80 (4th Cir. 2010) ("Moussaoui, having pled guilty, has waived all nonjurisdictional errors leading up to his conviction except those affecting the adequacy of his plea."); *Gomez v. Berge*, 434 F.3d 940, 943 (7th Cir. 2006) ("[B]y pleading no contest to the charges against him, Gomez waived his right to challenge any other alleged constitutional violations that preceded his plea. This includes contesting the trial court's determination that he was not competent to represent himself at trial."); *United States v. Montgomery*, 529 F.2d 1404, 1407 (10th Cir. 1976) ("The voluntary plea of guilty is the independent intervening act which renders ineffectual the prior failure to allow appellant to represent himself at a trial.").

[7] Sure enough, the Court agrees with Catanzaro that the Third Circuit would likely conclude that Hafner's guilty plea waived any challenge on appeal to the Court's ruling on the non-jurisdictional motion to proceed pro se. *Cf. United States v. Porter*, 933 F.3d 226, 228-31 (3d Cir. 2019).

**Da 0019**

Case: 23-3258      Document: 26      Page: 89      Date Filed: 08/29/2024

deference to Hafner's after-the-fact attestations of Catanzaro's performance. The Court has good reason to doubt Hafner's veracity. As outlined above, based on the Court's own observations and the observations of trained psychologists, Hafner has a propensity for manipulation and malingering. For example, Dr. Ross found that he very likely feigned deficits in legal knowledge to gain more favorable legal outcomes. And she noted that Hafner's personality disorder would likely continue throughout the criminal proceeding. Considering these findings, the Court affords little weight to Hafner's affidavit and his characterizations of Catanzaro's performance. *See Strickland*, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.").[8]

For similar reasons, the Court also concludes that Hafner has not shown sufficient prejudice from Catanzaro's allegedly deficient performance. As a matter of law, a guilty plea provides no absolute right to appeal. *Khattak*, 273 F.3d at 561 ("If done knowingly and voluntarily, a statutorily created right to appeal is generally held to be waiveable." (citation omitted)). So, Catanzaro advised his client not to take the plea deal if Hafner had any doubts about his ability to appeal. And yet, Hafner took the deal—evincing strong evidence that he did not want to go to trial. The Court also finds as persuasive evidence that Hafner instructed Catanzaro to seek a plea deal on the first day of trial. (Catanzaro Aff. ¶¶ 3-5.) Indeed, Hafner corroborates that Catanzaro informed him about the strength of the Government's evidence and about his minimal chances of success at trial. (*See* Hafner Aff. ¶ 4.) Hafner simply pinpoints nothing but post-hoc protestations of prejudice.

---

[8] Relatedly, the Court notes that neither party has requested an evidentiary hearing. To be sure, the Court does not find an evidentiary hearing necessary in this case as the affidavits and briefings provide sufficient information for the Court to evaluate the plea withdrawal and Catanzaro's plea advice.

Da 0020

Case: 23-3258      Document: 26      Page: 90      Date Filed: 08/29/2024

In addition to ineffective assistance, Hafner suggests that his state of mind is itself a sufficient reason to justify withdrawal. Hafner describes his state of mind at the time of his plea hearing as "greatly impacted" by witnessing an inmate suicide, as sleep deprived by lacking his usual sleep medication, and as dejected by losing on his motion to proceed pro se. (Def.'s Mot. 15-16.) The Court disagrees that Hafner's state of mind merits withdrawal. For one, he cites no law showing that an anxious mindset caused by a chaotic day of court proceedings justifies withdrawal. For another, Hafner presented with a neutral demeanor at the *Faretta* hearing (held the same day as the change-of-plea hearing) and engaged the Court in the following colloquy:

> THE COURT: . . . [A]re you under the influence or have you had any alcohol, medication, or any prescription drugs within the last 24 hours?
>
> THE DEFENDANT: No, Judge.
>
> THE COURT: Have you ever studied law?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Can you give me a description of the study of law that you've undertaken?
>
> THE DEFENDANT: A variety of courses, Judge. I have a degree as well.
>
> . . . .
>
> THE COURT: What kind of law classes have you taken?
>
> THE DEFENDANT: Introduction to criminal justice, criminal law, narcotics investigations, intelligence function, organizational integration, narcotics investigation, sex crimes, policing systems.
>
> THE COURT: Okay.
>
> THE DEFENDANT: Those are some of them. I'm probably missing a few, but, yeah, criminology, victimology, judicial function.

(May 17, 2022 *Faretta* Hr'g Tr. 5:6-6:1.) The Court notes as well that Hafner has previously exhibited a detailed knowledge of the law. For example, during the first trial, he cited caselaw and

**Da 0021**

Case: 23-3258   Document: 26   Page: 91   Date Filed: 08/29/2024

described his Sixth Amendment right to self-representation. (First Trial Tr. 39:13-20, 40:1-3, 42:24-43:19, ECF No. 91.) Like all defendants, Hafner may have been anxious, sleep deprived, and dejected throughout the plea proceedings, but that mindset alone fails to convince the Court that he did not rationally understand the factual basis of the plea or the legal consequences of it. *See Jamison v. Klem*, 544 F.3d 266, 272 (3d Cir. 2008) ("[C]ourts may not accept a guilty plea without first determining, on the record, that the guilty plea was the result of a knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." (citing *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969))).[9]

In sum, Hafner has not shown a sufficient reason for withdrawing his plea. Catanzaro's pre-plea advice was neither deficient nor prejudicial. Rather, Catanzaro's advice was correct and expressly advised Hafner to go to trial if he was concerned with his right to appeal. Nor has Hafner shown that his mindset during the plea proceedings rose to the level to render his plea unknowing. The Court discerns no reason to disturb Hafner's plea.

### C.    The Government Would Be Prejudiced by Hafner's Plea Withdrawal.

Turning to the final factor, the Government would be prejudiced by having to try Hafner a third time. At the onset, the Court notes that it need not address this factor at all. "[T]he Government need not show such prejudice when a defendant has failed to demonstrate that the other factors support a withdrawal of the plea." *Jones*, 336 F.3d at 255 (citing *United States v.*

---

[9] To the extent Hafner argues that his state of mind is relevant to his charge of ineffective assistance, the Court rejects that argument. Hafner does not assert that Catanzaro spent insufficient time explaining the guilty plea to him. Nor does he contest that Catanzaro told him that he may be waiving his appellate rights as a matter of law. (Hafner Aff. ¶ 10.) Moreover, the Court credits Catanzaro's assertion that he "specifically and strenuously advised Mr. Hafner, multiple times, not to sign the plea agreement and enter a guilty plea pursuant to the plea agreement if his ability to appeal the Court's rulings on his pretrial motions was an important factor in his decision to plead guilty." (Catanzaro Aff. ¶ 7.)

**Da 0022**

Case: 23-3258      Document: 26      Page: 92      Date Filed: 08/29/2024

*Harris*, 44 F.3d 1206, 1210 (3d Cir. 1995)). Even still, the Government has already expended considerable expense in twice bringing Hafner to trial—one of which Hafner abruptly ended by forcing a mistrial. In addition, Hafner has ended both of his trials at the beginning of each proceeding, after the Government assembled its witnesses and the Court seated the jurors. The Court finds inherent prejudice in convening a third trial.

## IV.   <u>CONCLUSION</u>

The Court concludes that Hafner fails to meet his substantial burden to withdraw his guilty plea. He has not credibly asserted his innocence or put forth plausible reasons for withdrawing his plea. And the Court reasons that there's inherent prejudice in risking a third trial with Hafner, a litigant who has proven to be repeatedly obstreperous and manipulative. An order consistent with this Memorandum Opinion will follow.

<u>s/ Michael A. Shipp</u>
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Da 0023

## UNITED STATES DISTRICT COURT
### District of New Jersey

UNITED STATES OF AMERICA

v.

**CASE NUMBER   3:19-CR-00790-ZNQ-1**

ERIC G. HAFNER

Defendant.

### JUDGMENT IN A CRIMINAL CASE
### (For Offenses Committed on or After November 1, 1987)

The defendant, ERIC G. HAFNER, was represented in absentia by BRANDON D. MINDE, CJA.

On motion of the United States, the court has dismissed counts 1-3, 5-16, 18-27, and 29-33 of the Indictment.

The defendant pleaded guilty to counts 4, 17, and 28 of the INDICTMENT on 5/17/2022.   Accordingly, the court has adjudicated that the defendant is guilty of the following offenses:

| Title & Section | Nature of Offense | Date of Offense | Count Numbers |
|---|---|---|---|
| 18 U.S.C. § 875(c) | TRANSMISSION OF THREATS IN INTERSTATE OR FOREIGN COMMERCE | 9/01/2016 | 4 |
| 18 U.S.C. § 875(b) | TRANSMISSION OF INTERSTATE COMMUNICATIONS WITH INTENT TO EXTORT | 9/06/2016 | 17 |
| 18 U.S.C. § 844 (e) | CONVEYING FALSE INFORMATION CONCERNING THE USE OF AN EXPLOSIVE DEVICE | 9/03/2016 | 28 |

As pronounced on December 07, 2023, the defendant is sentenced as provided in pages 2 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant must pay to the United States a special assessment of $300.00 for counts 4, 17, and 28, which shall be due immediately. Said special assessment shall be made payable to the Clerk, U.S. District Court.

It is further ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of any material change in economic circumstances.

Signed this 8th day of December 2023.

Zahid N. Quraishi
U.S. District Judge

**Da 0024**

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 240 months. This term consists of a term of 60 months on Count 4, a term of 240 months on Count 17, and a term of 120 months on Count 28, all to be served concurrently.

The Court makes the following recommendations to the Bureau of Prisons: to designate a facility for service of this sentence as near as possible to the defendant's home address.

The defendant will remain in custody pending service of sentence.

## RETURN

I have executed this Judgment as follows:

_____
_____
_____
_____

Defendant delivered on _____ To _____

At _____, with a certified copy of this Judgment.

_____
United States Marshal

By _____
Deputy Marshal

**Da 0025**

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of 3 years. This term consists of terms of 3 years on each of Counts 4, 17, and 28, all such terms to run concurrently.

Within 72 hours of release from custody of the Bureau of Prisons, you must report in person to the Probation Office in the district to which you are released.

While on supervised release, you must not commit another federal, state, or local crime, must refrain from any unlawful use of a controlled substance and must comply with the mandatory and standard conditions that have been adopted by this court as set forth below.

You must submit to one drug test within 15 days of commencement of supervised release and at least two tests thereafter as determined by the probation officer.

You must cooperate in the collection of DNA as directed by the probation officer

If this judgment imposes a fine, special assessment, costs, or restitution obligation, it is a condition of supervised release that you pay any such fine, assessments, costs, and restitution that remains unpaid at the commencement of the term of supervised release.

You must comply with the following special conditions:

DRUG TESTING AND TREATMENT

You must refrain from the illegal possession and use of drugs, including prescription medication not prescribed in your name, and must submit to urinalysis or other forms of testing to ensure compliance. It is further ordered that you must submit to evaluation and treatment, on an outpatient or inpatient basis, as approved by the U.S. Probation Office. You must abide by the rules of any program and must remain in treatment until satisfactorily discharged by the Court. You must alert all medical professionals of any prior substance abuse history, including any prior history of prescription drug abuse. The U.S. Probation Office will supervise your compliance with this condition.

COMPUTER MONITORING

You must submit to an initial inspection by the U.S. Probation Office, and to any unannounced examinations during supervision, of your computer equipment. This includes, but is not limited to, personal computers, personal digital assistants, entertainment consoles, cellular telephones, and/or any electronic media device which is owned or accessed by you. You must allow manual searches of these devices and the installation on your computer of any hardware or software systems which monitor computer use. You must pay the cost of the computer monitoring program. You may use a computer in connection with employment if approved by the U.S. Probation Office, provided you notify your employer of the nature of your conviction and any computer related restrictions that are imposed on you. The U.S. Probation Office will confirm your compliance with this notification requirement.

MENTAL HEALTH TREATMENT

You must undergo treatment in a mental health program approved by the U.S. Probation Office until discharged by the Court. As necessary, said treatment may also encompass treatment for gambling, domestic violence and/or anger management, or sex offense-specific treatment, as approved by the U.S. Probation Office, until discharged by the Court. The U.S. Probation Office will supervise your compliance with this condition.

CONSENT TO SEARCH

You must submit your person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer. Failure to submit to a search may be grounds for revocation of release. You must warn any other occupants that the premises may be subject to searches pursuant to this condition. The probation officer may conduct a search under this condition only when reasonable suspicion exists that you have violated a

Da 0026

condition of supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

LIFE SKILLS/EDUCATION

As directed by the U.S. Probation Office, you must participate in and complete any educational, vocational, cognitive or any other enrichment programs offered by the U.S. Probation Office or any outside agency or establishment while under supervision.

VICTIM (NO CONTACT)

You must not communicate, or otherwise interact with Victim Initials, either directly or indirectly, without first obtaining the permission of the U.S. Probation Office. This includes, but is not limited to, contact through a third person, personal visits, letters, communication devices, audio or visual devices, or social networking sites.

**Da 0027**

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1) You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment unless the probation officer instructs you to report to a different probation office or within a different time frame.

2) After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3) You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4) You must answer truthfully the questions asked by your probation officer.

5) You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6) You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7) You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have fulltime employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8) You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9) If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10) You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e.. anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11) You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12) If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

Da 0028

## STANDARD CONDITIONS OF SUPERVISION

13) You must follow the instructions of the probation officer related to the conditions of supervision.

---

*For Official Use Only - - - U.S. Probation Office*

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision or (2) extend the term of supervision and/or modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

You shall carry out all rules, in addition to the above, as prescribed by the Chief U.S. Probation Officer, or any of his associate Probation Officers.

(Signed)_____

                                 Defendant                               Date

_____

            U.S. Probation Officer/Designated Witness             Date

---

**Da 0029**